STATE ex rel. WILLIAM C. THOMPSON v. HUGH R. SCOTT.[1]

July 27, 1906.

Nos. 14,871—(212).

**Election—Nomination Fee.**
> Section 184, R. L. 1905, requiring the payment of fees upon filing for nomination at the primary election, is a reasonable regulation, and constitutional.

Application by William C. Thompson to the district court for Hennepin county for a writ of mandamus requiring defendant as county auditor to accept and file relator's affidavit of candidacy for a public office without exacting the filing fee provided by section 184, R. L. 1905. The case was tried before Dickinson, J., who denied the writ. From an order denying a motion for a new trial, relator appealed. Affirmed.

*Harrison E. Fryberger,* for appellant.

*Edward T. Young,* Attorney General, *George T. Simpson,* Assistant Attorney General, and *Wm. C. Leary,* County Attorney, for respondent.

LEWIS,

Proceedings in mandamus to compel respondent to accept and file relator's affidavit of candidacy for nomination as member of the Prohibition Party for the state legislature in the Fortieth legislative district.

The constitutionality of section 184, R. L. 1905, is the only question involved. It provides that at least twenty days before the primary

[1] Reported in 108 N. W. 828.

99 M.—10

election any person eligible and desirous of having his name placed upon the primary election ballot as a candidate for any office shall file his affidavit with the secretary of state, when to be voted for in more than one county, and with the county auditor when in a single county, stating residence, qualifications, etc., and, if the office be one for which pecuniary compensation is provided, upon payment of $20 to the secretary of state, when the affidavit and petition is filed with him, and $10 to the auditor, when filed with him, and the officer then to place such name upon the primary election ballot of the party designated. The constitutionality of this section is assailed upon the ground that it violates section 1, article 9, with reference to the equality and uniformity of taxation, and section 17, article 1, that no amount of property shall ever be required as a qualification for any office of public trust. The general claim is made that the filing fee bears no relation to the emoluments of the office, the cost of filing, or to the cost or expense of the election; that it is an unwarranted interference with the rights of the voter, and, if intended as a regulation, it is arbitrary, unreasonable and void, ignoring the principles of equality and uniformity.

Different features of the primary election law have been under consideration several times by this court, and in sustaining its constitutionality the general phases of the act have been considered. State v. Jensen, 86 Minn. 19, 89 N. W. 1126, presented the question whether that provision was constitutional which required a political party to have at least ten per cent. of the total vote cast at the last preceding election for its leading candidate, or a petition asking for the right to have a primary election ticket contain at least ten per cent. of the qualified electors of the county; and it was held that the restriction was reasonable and within the limitations imposed upon the legislature. In State v. Johnson, 87 Minn. 221, 91 N. W. 604, 840, the court had under consideration the constitutionality of the act, which was attacked upon the ground that no space was provided in which the names of candidates could be written, and it was held that the absence of such provision was not an interference with the exercise of the elective franchise. Again, in State v. Moore, 87 Minn. 308, 92 N. W. 4, 59 L. R. A. 447, 94 Am. St. 702, the constitutionality of that provision of the act was assailed which prohibits an unsuccessful contestant for

nomination at the primary election from having his name placed on the official ballot. The law was declared constitutional and a reasonable regulation governing the selection of nominees.

Relator cites State v. Drexel (Neb.) 105 N. W. 174, but in that case the act under consideration provided that the fee to be paid for filing nomination papers should be computed at one per cent. of the emoluments authorized by law to the office for which the candidate aspired during the term he would serve, if elected, and the court held that such fee was arbitrary and fixed wholly regardless of services performed; that it was the imposition of an unjust burden on those desiring to become candidates for public office, and would prevent many from becoming candidates; that it made the pecuniary ability of a person to pay the same the test as to his qualifications. The court, however, noted the distinction between such arbitrary measures and provisions amounting only to reasonable regulation. We are also referred to People v. Board of Election, 221 Ill. 1, 77 N. E. 321, where the act provided that any one desiring to become a candidate for governor, United States senator, and member of congress should, on filing a petition, pay a fee of $100; each candidate for state senator $50; for house of representatives $25; and, in Cook county, a candidate for mayor $75, and a candidate for alderman $25. This was held to be an arbitrary exaction of fees; that the payments bore no relation to the services in filing the papers, or the expenses of the election; that it made the ability and inclination of a person to pay the money the test of qualification, and of the right to choose him for public office. In the Nebraska law the attempt was made to have the fee bear some relation to the emoluments of the office, yet the court held it unconstitutional. In the Illinois act it would seem an attempt was made to have the fee correspond with the importance of the office, from the standpoint of dignity or influence, as well as the standpoint of emoluments, yet the court held the act unconstitutional because the payments bore no relation to the services rendered and made the ability and inclination of a person to pay the test of his qualification. Each court recognized the principle that some reasonable means might be adopted by the legislature to control and regulate primary elections for the selection of candidates for office, and we need not deny that both acts were arbitrary and unreasonable in the exaction of fees.

What is a reasonable restriction upon the right to stand for office is a matter of opinion. Clearly, unless some restriction is thrown about primary elections, no advance would be made over the old system, the abuses of which it was sought to correct. To prescribe an orderly and systematic method by which the people may select their candidates for public office, is within the province of the legislature, and apparently the exaction of a fee in filing as a candidate tends to prevent an indiscriminate scramble for office. Where shall the line be drawn, and who is to determine it? Fifty cents, one dollar, or two dollars would not go far to cut down the list of applicants. The amount should be fixed at a point which would not impose a hardship upon any person for whom there may be any considerable desire to vote at a nominating election, and yet enough to prevent a wholesale filing of petitions, for nomination by any one, regardless of whether or not they are desirable candidates. It must be admitted, at the very foundation of this question, that the amount of the fee is not intended to have any appreciable relation to the amount of the income from the office. It may have some relation to the amount of expense incurred, when the office is local, or of a more comprehensive character. But the fact that the law omits to require a fee from those who are expected to serve largely without compensation does not create such a marked distinction as to condemn the entire scheme of fees. When all these considerations are taken into account, we are of the opinion that the sum of $10 is not so large but that any person who may be called upon to stand as a candidate for public office can obtain the amount without hardship.

The principle that no amount of property shall ever be required as a qualification for any office of public trust has no application whatever. The law very wisely assumes that any candidate who is proper material to stand as such before the people for any public office requiring a fee of $10 or $20 will find no difficulty in raising the amount. Our conclusion is that the act is a reasonable regulation, and constitutional.

Order affirmed.