# STATE ex rel. JALMER M. LARSEN v. HUGH R. SCOTT.[1]

April 22, 1910.

Nos. 16,603—(32).

**Primary Election — Statutes Valid.**
Former decisions, holding that the statutes of this state providing for primary elections are valid, as regulating nominations of candidates by political parties, adhered to.

**Classification of Communities.**
The classification of communities made for such purpose is within the discretion of the legislature.

**Affidavit of Candidate — Requisites.**
The affidavit required of the candidate is sufficient, if it shows his residence is such as to render him eligible to the office he seeks.

Alternative writ of mandamus from the district court for Hennepin county directing the auditor of that county to print the name of David Morgan on the official election ballot to be used at the general election in November, 1910, as a candidate of the public ownership party for representative in the congress of the United States from the Fifth congressional district of the state of Minnesota, said Morgan not having been nominated at any primary election, and without the payment of the filing fee.

The petition for the writ alleged, inter alia, that the district committee of the public ownership party for that congressional district, which is the county committee of the party, by resolution appointed the time and place for holding a convention of delegates from the several election districts of that county for the nomination of a candidate for congress, appointed the time for holding the primaries for the election of delegates to that convention; that the primaries were held, delegates were elected, convention was held and the election of David Morgan, whose residence is in the city of St. Paul, Ramsey county, Minnesota; that a certificate of nomi-

[1] Reported in 126 N. W. 70.

nation was sworn to and presented to defendant with the demand
that it be filed and the name of the candidate printed on the blue
ballots; and that sections 184, 221 and 222 R. L. 1905, are un-
constitutional and violate the state and federal constitutions.

The court, Holt, J., sustained a demurrer to the petition and writ
and quashed the writ. From the judgment entered pursuant to the
order for judgment, plaintiff appealed. Affirmed.

*Carl Strover* and *F. J. Geist,* for appellant.

The affidavit and filing-fee requirements of section 184, and the
filing-fee requirements of sections 221 and 222 of Revised Laws
1905, as amended in 1907 and 1909, are unconstitutional as being
in contravention of the state and federal constitutions, in indirectly
adding to the constitutional qualifications for eligibility to office
prescribed by those constitutions as follows: By the constitution
of Minnesota, in section 25 of article 4, for senators and represent-
atives; in sections 6, 7 and 11 of article 6, for judges; and in sec-
tions 7 and 8 of article 7 for all elective offices, and in regard to
women; and by the constitution of the United States, in section
2 of article 1, for representatives in congress.

State v. Johnson, 87 Minn. 221, 224, did not mean that primary
election laws may indirectly override the constitutional provisions
concerning eligibility to office. The constitutions prohibit not only
direct additions to the qualifications for office fixed by them, but
just as much such as are made indirectly under the guise of regula-
tions of nominations, or by any other means which intentionally
or unintentionally effect that result. A statute which in effect de-
prives a voter of a constitutional right is void. Rogers v. Jacob, 88
Ky. 502. The legislature cannot do indirectly what it is prohibited
from doing directly. Galveston, H. & S. A. Ry. Co. v. Texas,
210 U. S. 217, 227; People v. Albertson, 55 N. Y. 50, 55; Cum--
mings v. State, 4 Wall. 277, 329; Joseph v. Randolph, 71 Ala.
499, 507; Taylor v. Commissioners, 23 Oh. St. 22, 78.

Under the Minnesota election laws, the following are the only three
ways in which a candidate can be voted for at the final elections,
for any of the offices to which, under section 181, the direct primary

law applies: (1) By being nominated at the direct primary elections; (2) by being nominated by petition; (3) by having his name written on the ballots by the voters. Only the first two of these three ways allow of the printing of the candidate's name on the ballots. State v. Jensen, 86 Minn. 19, 23. In the overwhelming majority of cases only nominees of such political parties as under section 182 are obliged to make their nominations by direct primary elections, will be elected to any office to which the direct primary law applies. Exceptions to this rule in the nature of things are bound to be very rare, and have been rare in the past. Courts take judicial notice of such facts. Attorney General v. Board, 58 Mich. 213, 223, 225. It follows that every restriction imposed upon nominations at the direct primary elections constitutes, in reference to the offices to which the direct primary law purports to apply, an indirect, but none the less effective, restriction on eligibility at the final elections. State v. Drexel, 74 Neb. 776, 790, 791; Dapper v. Smith, 138 Mich. 104; People v. Board, 221 Ill. 9, 21; Ballinger v. McLaughlin, 22 S. D. 206.

The direct primary election laws of Minnesota make no provision for blank spaces on the primary election ballots, for the writing in of additional names. State v. Johnson, 87 Minn. 221. Hence nobody can be nominated at a direct primary election whose name is not printed on the primary ballots. It further follows that every restriction imposed upon the printing of names upon the direct primary election ballots is virtually a restriction on eligibility to office at the final elections. Looking at section 184 in this light, there can be no question but that its requirements constitute restrictions upon the printing of names on the direct primary ballots which in effect amount to additions to the constitutional qualifications for office, contrary to the constitutions of both the state of Minnesota and of the United States.

Election to the office of representative in congress is, by section 184, further in effect illegally restricted to residents of the congressional district in question in direct violation of section 2 of article 1 of the United States constitution which prescribes as the only qualifications for representatives in congress that they must be

citizens of the United States, twenty-five years of age, and inhabitants of the state from which they are elected, at the time of their election.

It is well settled that where a constitution has fixed the conditions for eligibility to office, they cannot be changed or added to by legislative enactment, in the absence of constitutional authority. The specified qualifications of the constitution are an implied prohibition against legislative additions. Cooley, Const. Lim. (7th Ed.) 99; State v. Holman, 58 Minn. 219, 226; People v. English, 139 Ill. 622, 630; Thomas v. Owens, 4 Md. 189, 223; Sanner v. Patton, 155 Ill. 553, 564; McCafferty v. Guyer, 59 Pa. St. 109, 111; Morris v. Powell, 125 Ind. 281; City v. Hickman, 90 Ky. 629, 636; Pearson v. Board, 91 Va. 322, 330; State v. Blaisdell, 17 N. D. 575; Dapper v. Smith, 138 Mich. 104; State v. Tuttle, 53 Wis. 45, 49; Johnson v. County, 16 N. D. 363.

The requirement of a declaration under oath by the person to be nominated that he desires to be a candidate, is not only vicious in principle, but a plain violation of the constitution. Dapper v. Smith, supra; State v. Blaisdell, supra. And no court can justly uphold the proposition that the voters can be restricted in their choice of nominees, in the face of the constitutional provisions implying the contrary, to members of any party, even their own. The constitutions provide that the voters shall be at liberty to pick the best men for candidates, regardless of the fact whether they belong to any party. Still more irreconcilable with the freedom allowed by the constitutions in the choice to office, are such narrow provisions as would, in effect, debar the voters from electing to the offices covered by the direct primary laws, those who have changed their party affiliation since the last election, and those who refuse to promise in advance on oath to vote for the majority of a set of candidates the make-up of which is utterly unknown to them, and which cannot be known until after the primaries. No legislature has the right to debar the voters of any party from electing or nominating to office anybody who is constitutionally qualified, no matter whether he is a new party member or is unwilling to give any pledges as to his vote at the next election.

The requirement of a contribution of $10 or $20 to the public treasury is objectionable for the same reason. This court should not hesitate in condemning these fees because they merely by indirection impair constitutional rights. Similar fees have been condemned in the following cases: State v. Drexel, supra; People v. Board, supra; Johnson v. County, supra; Ballinger v. McLaughlin, supra. When this court in State v. Scott, 99 Minn. 145, upheld the "filing fees" provided by section 184 as "reasonable regulation," its attention had not been directed to the fundamental constitutional objections against the whole of section 184 which are now placed before it. In fact the legality of the requirement of the filing of the affidavit prescribed by section 184, and of the incidental exaction of some payment, seems to have been expressly conceded by appellant in that case, and only the reasonableness of the amount of the payment seems to have been drawn in question. Upon such a theory there might be reason for this court to hold as it did. No measure can be upheld as a reasonable regulation which conflicts with rights guaranteed by the constitution. 10 Am. & Eng. Enc. (2d Ed.) 574, 580, 581; State v. Moore, 87 Minn. 308; Attorney General v. Common Council, 78 Mich. 545, 553, 555, 563; Kinneen v. Wells, 144 Mass. 497, 499, 503; Daggett v. Hudson, 43 Oh. St. 548, 559; State v. Findlay, 20 Nev. 198, 200, 202; State v. Dillon, 32 Fla. 545, 555, 556; State v. Adams, 2 Stew. (Ala.) 231, 239; Allison v. Blake, 57 N. J. L. 6, 11; Quinn v. State, 35 Ind. 485; Page v. Allen, 58 Pa. St. 338, 346, 347; People v. Albertson, 55 N. Y. 50, 55; People v. President, 144 N. Y. 616, 620, 621.

The reasoning of the authorities cited applies with particular force to the filing-fee requirements of section 184, in view of the manifest fact that the object to prevent an overcrowding of the primary ballots, might have been easily attained by wholly constitutional means, such for instance as the requirement of verified nominations in writing by resident party-voters in number equal to a given percentage of the party vote at the last preceding general election—making the proceeding similar to that provided by section 213, R. L. 1905. Such an arrangement would have the further ad-

vantage that it would place the initiative where it belongs, with the voters rather than with the office-seekers. Such an arrangement is in effect in Wisconsin (Sanborn An. St. 1906 Supp. 33) and is thoroughly practical.

Appellant is aware that recently the supreme court of California in Socialist Party v. Uhl, 155 Cal. 776, upheld (at page 186, 103 Pac., last paragraph, to 189, first paragraph) similar provisions as are contained in section 184, including both an almost identical affidavit and a filing fee. It is to be observed, however, that this decision was largely based upon a special constitutional amendment by which special discretion was conferred upon the legislature to prescribe tests and conditions for primary elections.

The filing fee provisions of sections 221 and 222 constitute even more direct additions to the constitutional qualifications for eligibility to office than the filing fee requirements of section 184. If a man, constitutionally qualified, and legally nominated either by convention, primary or petition, and thus declared to be the choice of a legal number of his fellow citizens for an office, cannot have his name printed on the final election ballots without the payment of a fee ranging from two dollars for offices in small cities to fifty dollars for state offices, then the requirement of such fees constitutes in effect a well nigh direct, and certainly an indirect addition to the constitutional qualifications for eligibility to office. For with such a law in effect it is practically out of the question that anybody can be elected to office without the payment of the required fee. A restriction which is made in mere recognition of natural conditions, under, and in harmony with, the constitutional qualifications, is unobjectionable; while one which directly or indirectly adds thereto, is to be condemned. Can the fees of sections 221 and 222 be upheld as revenue measures? By the exercise of the power of imposing filing fees, in connection with nominations, if such power were legal, the legislature might make it unreasonably difficult, if not practically impossible, for anybody to run for public office, except those commanding great wealth, or the favorites of the party or parties holding the public offices, thus setting at naught the constitutional guaranties. A power involving such possibilities for evil is not con-

ferred upon the legislature. In fact it is by necessary implication denied.

Most of the reported cases covering this point involve attempts of state legislatures to interfere by taxation with agencies created, or powers vested, under the federal constitution. See Pollard v. State, 65 Ala. 628; McCulloch v. State, 4 Wheat. 316; Crandall v. State, 6 Wall. 35; Welton v. State, 91 U. S. 275; Galveston, H. & S. A. Ry. Co. v. State, supra. But the same principle must of necessity apply to legislative attempts to burden, by the power of taxation, any rights and privileges which are above legislative interference. See Rossmiller v. State, 114 Wis. 169, 188.

The affidavit and filing-fee requirements of section 184 and the filing-fee requirements of section 222, as since amended, are unconstitutional as being in contravention of the state and federal constitutions, in that by means of such requirements the state of Minnesota denies to citizens thereof within its jurisdiction, to wit, the candidates for office affected by said requirements, and the voters desiring to vote for such candidates, the equal protection of the laws, and deprives such citizens of liberty and property without due process of law, contrary to section 7 of article 1 of the constitution of Minnesota, and contrary to section 1 of the fourteenth amendment of the constitution of the United States.

While it is competent for the legislature to make its own definitions for its own purposes, it cannot thereby alter the fact that all "political parties," using these words in the common acceptance of the term, are entitled to equality of treatment, except on just grounds for difference in treatment; aye, and that even all political parties together cannot, except on just grounds for difference in treatment, be denied rights which are given to voters at large, nominating by petition; and that restrictions cannot be imposed upon one class of political parties or voters which are not equally imposed upon other classes, unless a valid reason exists for difference in treatment. Yet the legislature has declared, in effect, that members of political parties which do not come within the definition of section 182, and voters at large, by petition, may nominate any constitutionally eligible person, regardless as to whether he desires to be a candidate for office,

regardless as to whether he contributed $10 or $20 to the public treasury; regardless of his party affiliations; regardless of how he voted at the last election, and without any requirement that he shall make promises under oath as to how he will vote at the ensuing election. All of these precious requirements are by section 184 enacted exclusively for the members of political parties coming within the definition of section 182. No valid reason exists for discrimination along these lines, and the requirements of section 184 therefore are unconstitutional, under the decisions previously cited.

The provisions of section 184 certainly fall directly under the condemnation of what is said in State v. Jensen, 86 Minn. 19, 25.

The provisions of section 184 which constitute arbitrary discriminations against the electors of the several parties coming within the definition of section 182 also arbitrarily discriminate against the voters of cities having more than 10,000 inhabitants. Why should the voters of a city of 10,100 inhabitants be hampered by the restrictions of section 184 (see section 181, in connection with section 746, R. S. 1905) and the voters of a city of 9,900 inhabitants be free to select for city officers any persons constitutionally qualified? See People v. Board, 221 Ill. 9, 26, 27, 28. Why should the man who desires to be sheriff or mayor of a city of 10,100 population be nominated under a burdensome and restrictive law, while the man who desires to be secretary of state or mayor of a city of 9,900 population may be nominated for office freely? Why should the former be required to declare on oath that he is an office-seeker, and not the latter? Why should the former be required to be a party-member, and not the latter? Why should the former be forced to make statements under oath as to how he voted at the last preceding general election, and not the latter? Why should the aspirant for the mayorality in a city of 10,100 be obliged to promise on oath that he will support at the next election the majority of nominees of the party nominating him, and the aspirant for the same honors in a city of 9,900 be free of such requirement? What is there in the conditions of the two cases to justify such discriminations?

If the fees prescribed by sections 221 and 222 were really intended as "filing fees," there is no reason why they should be higher in the

case of candidates for state offices, than in the case of candidates for city or county offices. If they were to bear an approximate relation to the size of the territory in which—or to the number of voters to which—the respective ballots are to be submitted, then the fees provided to be paid in the case of state officers are out of all proportion too small when compared with those required in the case of county or city officers.

Plainly, the classification adopted by section 222 is purely arbitrary, and has no foundation in difference of situation or circumstances. It is therefore class legislation within the condemnation of the constitution.

Sections 221 and 222, as amended in 1907, arbitrarily exempt certain offices entirely from the payment of the filing fees prescribed by them, without any justification for such discrimination in difference of conditions. It should be particularly borne in mind that no less service in the filing of certificates and printing of ballots, is rendered in the case of offices covered by these exemptions than in those cases in which by sections 221 and 222 the payment of a fee is required, and that the payment of fees at the direct primary elections in reason has absolutely nothing to do with the payment of fees at the final elections (being made for an entirely different purpose) and can therefore constitute no just ground for exemption from the payments required by sections 221 and 222.

The terms "life, liberty and property" comprehend every right known to the law. Goldfield C. M. Co. v. Goldfield M. U. No. 220, 159 Fed. 501, 515; Cummings v. State, 4 Wall. 277, 320; State v. Julow, 129 Mo. 163, 172, 173.

If the legislature passes an act ostensibly in the exercise of the police power, but which in fact unnecessarily interferes with the liberty of the citizen, the courts have a right to examine the act, and see whether it relates to the objects which the exercise of the police power is designed to secure, and whether it is appropriate for the promotion of such objects. State v. Chicago, M. & St. P. Ry. Co., 68 Minn. 381, 385; Ruhstrat v. People, 185 Ill. 133, 142; Bessette v. People, 193 Ill. 334, 344, 345. The federal constitution protects the citizen against arbitrary and unreasonable legislation, interfer-

ing with the exercise of those rights which have been conferred by the states. United States v. Cruickshank, 92 U. S. 542, 555; McPherson v. Blacker, 146 U. S. 1, 38, 39.

The filing fee requirements of sections 221 and 222 are likewise unconstitutional because they are unreasonable, vexatious and burdensome, and arbitrarily interfere with the free exercise of the right of suffrage and of eligibility to office as conferred by the constitution, thus constituting deprivation both of liberty and of property without due process of law. Any enactment imposing a fee upon the exercise of a common right safeguarded by the constitution, is an invasion of the right to liberty and property without due process of law. Rossmiller v. State, 114 Wis. 169, 188.

The affidavit requirements of section 184 of the Revised Laws 1905 being unconstitutional, the whole direct primary law of Minnesota must fall. The remaining parts of the direct primary law are incapable of being carried into effect without the affidavit prescribed by section 184,—there being no statutory way to get the names of candidates upon the primary ballots, other than by means of the affidavit there prescribed and the whole direct primary law must fall. People v. Strassheim, 240 Ill. 279; Minnesota Sugar Co. v. Iverson, 91 Minn. 30; People v. Board, supra; Norton v. Shelby County, 118 U. S. 425, 442.

*Al. J. Smith,* County Attorney, and *Elmer W. Gray,* Assistant County Attorney, for respondent.

O'BRIEN, J.

The Public Ownership party of the Fifth congressional district of Minnesota, coextensive with Hennepin county, on November 15, 1909, by a delegate convention selected David Morgan, a resident of Ramsey county, Minnesota, as its candidate for representative in congress, to be voted for at the general election in 1910. A duly verified certificate of such nomination was delivered for filing, without tender of the filing fee, which certificate the respondent, the auditor of Hennepin county, refused to receive. This proceeding in mandamus was thereupon instituted, and judgment in favor of the respondent entered upon the pleadings.

Upon this appeal the appellant claims that the laws of this state regulating primary elections and providing requirements for placing upon the official ballot the names to be voted for at a general election are in conflict with the constitution of this state, and with the federal constitution as well, and that the candidate, having been nominated by a duly called convention of the party, is entitled to have his name placed upon the official ballot at the next election.

1. The statutes of this state providing for primary elections and the nominations of candidates for office have been by the former decisions of this court construed as regulations of political parties and of nominations for office, and that in no manner do they attempt to abridge the right of the individual to be a candidate, or to vote as he may see fit, and that the filing fee required by a candidate before his name is placed upon the official ballot is reasonable regulation, and not an abridgement of the citizen's rights. State v. Jensen, 86 Minn. 19, 89 N. W. 1126; Davidson v. Hanson, 87 Minn. 211, 91 N. W. 1124, 92 N. W. 93; State v. Johnson, 87 Minn. 221, 91 N. W. 604, 840; State v. Moore, 87 Minn. 308, 92 N. W. 4, 59 L.R.A. 447, 94 Am. St. 702; State v. Scott, 87 Minn. 313, 91 N. W. 1101; Lind v. Scott, 87 Minn. 316, 92 N. W. 96; State v. Scott, 99 Minn. 145, 108 N. W. 828. On this appeal we are asked to overrule those cases; but, in spite of the able presentation of appellant's claims, we adhere to the former decisions of this court.

2. It is argued that the statute is invalid because of the classification of communities to which it applies. We think the classification is entirely within the discretion of the legislature; it being apparent that the subject of law is one in which the density of population in a given district is an important consideration and bears a direct relation to the subject of the legislation. State v. Brown, 97 Minn. 402, 106 N. W. 477, 5 L.R.A.(N.S.) 327; Hjelm v. Patterson, 105 Minn. 256, 117 N. W. 610, 127 Am. St. 560; Lowry v. Scott, supra, page 98, 124 N. W. 635.

3. It is further argued that section 184, R. L. 1905, conflicts with the federal constitution, specifying the qualifications of members of congress, in this: That a citizen is eligible to election to the national house of representatives from any district in the state of which he

is a resident, while section 184 requires of the candidate that he make an affidavit " * * * that he is a qualified voter in the subdivision where he seeks a nomination. * * * " Mr. Morgan, it is alleged, although a resident of Ramsey county, is eligible to election as such representative of the Fifth congressional district, which is entirely contained within the limits of the county of Hennepin, and he cannot comply with the statute, as he cannot affirm he is a resident of the subdivision in which he had been nominated. As we construe the statute, it requires the candidate in his affidavit to state only the facts which show that he is eligible, and that in the present case a statement of Mr. Morgan's actual residence would be a full compliance with its requirements.

Judgment affirmed.