[Civ. No. 7099.   Third Dist.   Dec. 13, 1944.]

JOHN GRAY, Appellant, v. ROBERT W. KENNY, as Attorney General, etc. et al., Respondents.

John Gray, in pro. per., for Appellant.

Robert W. Kenny, Attorney General, and Charles W. Johnson, Supervising Deputy Attorney General, in pro. per., for Respondents.

ADAMS, P. J.—Appellant, John Gray, appearing in propria persona, on or about the third day of February, 1944, filed in the Superior Court of Sacramento County a petition for a writ of mandate to compel respondents to prepare a title to and a summary of the chief purposes and points of a proposed initiative measure to be submitted to the electors of the state, alleging in his petition that such a measure had been submitted to respondents by petitioner on December 24 and 25, 1943, with a request that same be so entitled and summarized, but that respondents had refused to prepare a title or summary. An alternative writ having issued, respondents filed a return thereto in the form of a general demurrer, which was sustained by the court without leave to amend. Judgment dismissing the action followed and petitioner has appealed therefrom.

It appears from the brief of appellant in this court, and the opinion of the trial court which is set forth in the record before us, that respondents' demurrer was sustained because of the failure of the petition to allege that petitioner had paid or tendered to the attorney general the fee required by section 1401 of the Elections Code as amended in 1943 (Stats. 1943, ch. 171, p. 1067). That section provides that the proponents of any proposed initiative measure, prior to circulating any petition for signatures thereon, shall submit a draft of the petition to the attorney general with a request that he prepare a summary of the chief purposes and points of the proposed measure; and, as amended, requires that the proponents of any such initiative measure shall, at the time of submitting the draft thereof to the attorney general, accompany the same with a fee of $200, such fee to be placed in a trust fund in the office of the State Treasurer to be refunded to the proponents if, within two years from the date such summary is furnished to the proponents, such measure qualifies for the ballot. Otherwise such fee shall be forthwith paid into the general funds of the state.

Appellant contends that the aforesaid statute, insofar as it requires the deposit of the $200 fee, is in violation of

article IV, section 1, of the Constitution of this state, because of the provision of said section 1 that "This section is self-executing, but legislation may be enacted to facilitate its operation, but in no way limiting or restricting either the provisions of this section or the powers herein reserved." He cites no authorities in support of his position but argues that the sum demanded is a tax, a toll, an assessment, and since it is returnable if the proposed measure qualifies for the ballot, it becomes a penalty because of failure of the proponents; that the amount of the fee is arbitrary and out of all proportion to the value of the service; that the constitutional provision forbids the Legislature from exacting fees to county clerks for canvassing signatures, and provides that boards of supervisors shall provide for extra help and provide their compensation, thus indicating that no fees are to be exacted of proponents; and that the exaction of the $200 fee is not in furtherance of the purpose of the initiative provision, but restricts, narrows and embarrasses the right. He designates section 1401 of the Elections Code and section 1407 (Stats. 1943, ch. 226, p. 1127) as "vicious and void acts," and prays that they be so declared by this court.

Respondents in their reply brief assert that the provision of the Constitution relied upon by appellants is, in effect, but a canon of interpretation which would be applicable if not specifically set forth in the measure, and that, as stated in *Chester* v. *Hall*, 55 Cal.App. 611, 616 [204 P. 237], while the section is self-executing, legislation may be enacted "to facilitate its operation and place safeguards around the exercise of the rights thereby secured so long as the right itself is not curtailed or its exercise unreasonably burdened"; that the Legislature may impose reasonable limitations upon the exercise of a constitutional right in order to prevent an abuse thereof; and that the provision in section 1401 of the Elections Code, for the deposit of the $200 fee, is a reasonable requirement designed to prevent an abuse of the right and the circulation of frivolous petitions.

In 1915, and subsequent to the adoption of section 1 of article IV of the Constitution, the Legislature provided, in section 1197a of the Political Code, that proponents of an initiative measure should, prior to circulating any petition for signatures thereon, submit a draft of the petition to the attorney general with a request that he prepare a title and summary;

and in section 1197b, that proponents of any measure place upon each section of the petition the title and summary referred to in section 1197a, and, across the top of each page after the first page of every petition a short title in not to exceed twenty words. Also, that no officer chargeable by law with receiving or filing in his office any such petition should receive or file it if it did not conform to these provisions. The Constitution did not at that time contain the provisions of those sections though portions of them, but not the portion requiring the short title, were incorporated into it in 1932. It did, however, contain the provision that the measure is self-executing, but that legislation may be enacted to facilitate its operation, but in no way limiting or restricting either the provisions of the section or the powers therein reserved.

While the question of whether sections 1197a and 1197b were unconstitutional for the reason that they "limited or restricted" the provisions of section 1, article IV, does not appear to have been raised in the courts, though since they imposed certain duties upon proponents of initiative measures, and prohibited the filing of petitions which did not comply therewith, the arguments made by this appellant regarding the 1943 amendment to section 1401 of the Elections Code might have been advanced against them with equal logic. However, in *Boyd* v. *Jordan*, 1 Cal.2d 468 [35 P.2d 533], and *Clark* v. *Jordan*, 7 Cal.2d 248 [60 P.2d 457, 106 A.L.R. 549], writs of mandamus to compel the Secretary of State to refrain from placing on the ballot initiative measures which did not conform were issued, the court holding that the requirements of section 1197b regarding short titles on initiative petitions are mandatory. In both cases distinguished and able counsel opposed the granting of the writs, and it seems reasonable to assume that had they been of the opinion that the aforesaid requirements limited or restricted the provisions of section 1 of article IV they would have so urged in those proceedings. In the former case the court said that section 1197b was enacted in pursuance of the authority given by section 1, article IV, to enact legislation to facilitate the operation of said section, and that its purpose was to throw additional safeguards around the operation of the initiative law.

Section 1083a of the Political Code provided, prior to the incorporation of said section into the Elections Code, that one signing an initiative petition should, at the time of signing, affix the "date of such signing," a provision which is not re-

quired by section 1 of article IV of the Constitution. But the court, in *Boggs* v. *Jordan,* 204 Cal. 207, 214 [267 P. 696], said that this code section was intended to supplement the constitutional regulations governing the circulation, filing and examination of initiative, referendum and recall petitions, and while its validity was not disputed, that it need not be questioned, citing *Chester* v. *Hall,* 55 Cal.App. 611, 616 [204 P. 237], and *Chambers* v. *Glenn-Colusa Irr. Dist.,* 57 Cal.App. 155 [206 P. 773]. In the former case this court said, pages 616-617, that the requirement of section 1083a of the Political Code that the signer of a petition shall affix thereto the date of such signing in no manner prevents any person from signing or places an undue burden on the exercise of the right; that the Constitution prescribes the qualifications of electors and provides that all persons having such qualifications ''shall be entitled to vote at all elections''; that the Constitution makes no provision for the registration of electors, yet registration laws have always been upheld as reasonable regulations by the Legislature for the purpose of ascertaining who are qualified electors and preventing illegal voting. Also see *Thompson* v. *Kerr,* 16 Cal.2d 130, 131-132 [104 P.2d 1021], holding that the provision in the Elections Code that each signer of an initiative petition shall at the time of signing the petition or paper himself affix thereto the date of his signing, is mandatory, and constitutes a reasonable legislative regulation in furtherance of and not a limitation upon the initiative power reserved in the Constitution, citing *Uhl* v. *Collins,* 217 Cal. 1 [17 P.2d 99, 85 A.L.R. 1370].

An analogous situation was presented in *Chesney* v. *Byram,* 15 Cal.2d 460 [101 P.2d 1106], where it was argued that a legislative enactment was invalid as constituting a limitation upon a right granted by the Constitution. Section 3612 of the Political Code (see Rev. & Tax. Code, §§251-255.5) required a veteran desiring the exemption from taxation provided for by article XIII, section 1¼, of the California Constitution, to give to the assessor, under oath, information prescribed by the Board of Equalization, failure to do so being deemed a waiver of the exemption. Chesney contended that the requirement of the statute was void as being a limitation upon his constitutional right. The court held that though the constitutional provision was self-executing, the Legislature had power to enact legislation providing reasonable regula-

tion for the exercise of the right to the exemption. It said, as was said in *Boggs* v. *Jordan, supra,* that the Constitution prescribes the qualifications of electors and provides that all persons having such qualifications shall be entitled to vote at all elections; that it makes no provision for the registration of electors, yet registration laws have always been upheld as reasonable regulations for the purpose of ascertaining who are qualified electors, and preventing illegal voting; and that it has been uniformly held that the Legislature has power to enact statutes providing for reasonable regulation and control of rights granted under constitutional provisions (citing cases, p. 465).

In *Socialist Party* v. *Uhl,* 155 Cal. 776 [103 P. 181], a statutory provision that filing fees be paid by candidates for office under the Primary Election Law was held valid. The court said that the Constitution, article II, section 2½, gave the Legislature the right to fix conditions upon which participation in a primary election may be had, and under this grant of power it had a right to determine what are reasonable regulations, citing *State* v. *Nichols,* 50 Wash. 508 [97 P. 728, 730]; that the exaction of a fee tends to prevent an indiscriminate scramble for office; that where it is fixed at an amount which will impose no hardship upon any person for whom there should be any desire to vote, and yet enough to prevent the wholesale filing of petitions for nomination of anyone regardless of whether or not he is a desirable candidate, it is but a reasonable means to regulate primary elections; that the constitutional provision that no property qualification shall be required of any person to vote or hold office is not violated by such provision as the payment of a fee, but is a reasonable regulation prescribed by the Legislature on the wise assumption that any candidate who is of sufficient worth to stand before the people as a candidate for public office and whose candidacy calls for the payment of the fee required by the act, will have no difficulty in paying the required amount. (Citing *State* v. *Scott,* 99 Minn. 145 [108 N.W. 828]; *Montgomery* v. *Chelf,* 118 Ky. 766 [82 S.W. 388, 389].)

In *State* v. *Nichols,* above cited, it was held that under the primary election law of Washington the exaction of a reasonable fee for the privilege of running for office could be sustained on the principle that those who seek the benefit of a particular proceeding provided by law may be compelled to reimburse the state for a portion of the cost the state incurs in carrying into effect the particular proceeding. Also see

*Riter* v. *Douglass,* 32 Nev. 400 [109 P. 444, 456], and *State* v, *Brodigan,* 37 Nev. 492 [143 P. 238, 239, L.R.A. 1915B 197].

It is said in Cooley's "Constitutional Limitations," seventh edition, page 254, that the constitutionality of a law is presumed, because the Legislature must be deemed to have acted with integrity, and with a just desire to keep within the restrictions laid by the Constitution upon their actions. Also, pages 236-237, that the judiciary "cannot run a race of opinions upon points of right, reason and expediency with the lawmaking power." ▆ A reasonable doubt must be solved in favor of legislative action (Cooley's "Constitutional Limitations," (8th ed.), p. 372).

The measure which petitioner alleges he submitted to the attorney general for entitling, proposes the amendment of article VI of the Constitution dealing with the Judicial Department, by the addition of sections 24a, 24b and 24c to said article, said sections being designed to prescribe, regulate and limit the manner of rendering decisions by appellate courts, and to provide severe penalties for judges whose opinions fail to conform to the views of the author of the measure.

▆ If there is any great popular demand for such legislation, and grave necessity for incorporating its provisions into the Constitution, certainly the payment of a fee of but $200 cannot be said to be out of proportion to the importance of the proposed legislation, nor to impose an unreasonable burden upon its proponents, especially since, if the proposed measure has sufficient merit to find support by the requisite number of electors, the amount deposited is to be returned. It is not even alleged by appellant that he is unable to advance the required fee. It is obvious from the litigation that has heretofore arisen involving the sufficiency of titles to initiative measures that the preparation of such titles calls for skillful and painstaking work on the part of the attorney general and his staff, and we cannot say that the provision by the Legislature that those persons who impose upon public officials the duty of preparing such titles shall advance a fee of $200, unduly or unreasonably, or at all, narrows, limits or embarrasses the right to initiate legislation pursuant to section 1, article IV, of the Constitution, or does more than throw additional safeguards around its operation to the end that it may not be misused for purely personal purposes by proponents of measures that have no reasonable chance of approval by the requi-

site number of voters. The Legislature must be deemed to have acted with integrity in enacting this amendment to section 1401 of the Elections Code, and to have determined that the amount of the fee required to be deposited is reasonable; and we are not prepared to say that it is unreasonable. Any doubt on that subject must be resolved in favor of the legislative action.

The judgment is affirmed.

Thompson, J., and Peek, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied February 8, 1945.