**William V. FOWLER, Plaintiff,**

**v.**

**Tom ADAMS, Secretary of State of the State of Florida, Defendant.**

**No. 70–169–Civ.–J.**

United States District Court,
M. D. Florida,
Jacksonville Division.

July 25, 1970.

William V. Fowler, pro se.

Roger W. Foote, Asst. Atty. Gen., Tallahassee, Fla., for defendant.

Before SIMPSON, Circuit Judge, and McRAE and YOUNG, District Judges.

## OPINION—ORDER

SIMPSON, Circuit Judge:

Plaintiff seeks declaratory and injunctive relief from this statutory three-judge court,[1] holding unconstitutional in form and in application portions of Chapter 99, "Candidates, Campaign Expenses and Contesting Elections", Florida Statutes, F.S.A. The statutes under attack are Sections 99.021 and 99.092, Florida Statutes, F.S.A. The claim of unconstitutionality is based upon Article I, Section 2, Clause 2, of the federal Constitution and the Equal Protection clause of the Fourteenth Amendment thereto.[2] Although a due process claim is not advanced by the pleadings, the applicability of the Due Process clause of the Fourteenth Amendment was discussed at oral argument and will be adverted to briefly here.

We determine that a substantial question is presented to the court but for reasons briefly set forth below reach the conclusion that each of plaintiff's contentions is without merit and that we would not be warranted in granting any relief. Mayhue's Super Liquor Store, Inc. v. Meiklejohn, 5 Cir. 1970, 426 F.2d 142; Jackson v. Choate, 5 Cir. 1968, 404 F.2d 910.

The facts necessary to decision are undisputed and may be briefly set forth. The pro se plaintiff, Fowler, seeks a mandatory requirement that his name be placed on the ballot as a candidate for the United States House of Representatives from the Fourth Florida Congressional District in the Republican party primary election to be held in Florida on September 8, 1970. The primary election will be held under the provisions of Chapter 99, Florida Statutes, supra.

Plaintiff originally refused to sign the oath as set forth in F.S.A., Section 99.021, requiring among other things a sworn declaration of party loyalty and affiliation and payment of a 5% filing fee pursuant to F.S.A., Sections 99.021 and 99.092. At the July 17, 1970, hearing before District Judge McRae on application for a temporary restraining order the plaintiff put in evidence a telegram from the defendant's office indicating that the only statutory requirement he has failed to meet is payment of the 5% filing fee. Proof of an attempt to qualify was critical to the plaintiff's establishment of standing.

The 5% requirement applied to the annual congressional salary of $42,500 would require that plaintiff pay a filing fee of $2,125.00. Under Section 99.092, 3% or $1,275.00 would be qualification fee, and 2% or $850.00 would be the party assessment, payable to the political party in whose primary the candidate qualifies.

Judge McRae's temporary restraining order was entered July 17 in view of the imminence of July 21, the last day for qualifying for the September 8, 1970 primary election. Under it the defendant was temporarily enjoined from refusing to accept the plaintiff's qualifying papers for failure to pay the prescribed fee, with leave to remove plaintiff's name from the ballot in the event this panel should later determine that the state may constitutionally require payment of the fees. The temporary restraining order thus prevented plaintiff's constitutional claims from being mooted by the passage of time before the three-judge panel could be assembled, hear arguments and rule. Such a hearing was held on July 22 and we now proceed to indicate our reasons for de-

1. Convened pursuant to 28 U.S.C., Sections 2281–2284.

2. The complaint asserts also violation of Section 5 of the Voting Rights Act of 1965, 42 U.S.C., Section 1973c. This section is clearly inapplicable since neither Florida nor any political subdivision thereof is subject to the prohibition set forth in Title 42, U.S.C., Section 1973b (a) and (b). The plaintiff, a layman, brings this suit in proper person and no doubt picked up the reference to the Civil Rights Act from one of the cases he relies upon. No further reference will be made to this patently spurious claim.

termining that the plaintiff's attack upon the Florida Statutes requiring the filing fee must fail, and his complaint be dismissed.[3]

Article I, Section 2, Clause 2, of the federal Constitution provides:

"Qualifications of members. No person shall be a Representative who shall not have attained to the Age of twenty five Years, and been seven Years a Citizen of the United States, and who shall not, when elected, be an Inhabitant of that State in which he shall be chosen."

■ The argument here goes that the qualifications may not be enlarged by the states by the imposition of any further restriction, including the payment of filing fee, upon who may stand for election to the Congress. The short answer is that the Florida Statutes under attack are a legitimate regulation of the "Manner of holding Elections" prescribed by the state as permitted by Article I, Section 4, Clause 1, of the federal Constitution which provides that:

"Congressional elections; time, place, and manner of holding. The Times, Places and Manner of holding Elections for Senators and Representatives, shall be prescribed in each State by the Legislature thereof; but the Congress may at any time by Law make or alter such Regulations, except as to the Places of chusing Senators."

Congress has never exercised its right to "make or alter such Regulations". Article VI, Section 1, Florida Constitution, F.S.A., gives the legislature the power to levy a filing fee as an incident to qualification for party primaries by the provision stating: "Registration and elections shall, and political party functions may, be regulated by law". It seems clear to us that the required filing fee is not an additional qualification to hold office but is simply a regulatory measure designed to insure fair and orderly elections. So long as the amount is reasonable—and we hold that the amount here involved is reasonable—objection thereto on this ground is without validity. The qualifications set forth in Article I, Section 2, Clause 2, must be possessed by the candidate, that is they are qualifications personal to him. A filing fee, to the contrary, is not personal to the candidate but may be paid by anyone in his behalf.

See Bodner v. Gray, Fla.1961, 129 So. 2d 419, where the Florida Supreme Court judicially noticed the fact that the majority of Florida votes were cast on voting machines. We, as Florida citizens and judges sitting as a Florida district court, take judicial notice of the continual increase in Florida's use of voting machines in the decade since Bodner. In Bodner the Supreme Court of Florida pointed out:

" * * * [i]n the absence of statutes imposing reasonable fees upon the right to become a candidate for public office, the number could easily reach a point that would render the machinery set up by the Legislature for the purpose of election to public office wholly inoperative."

and held that the requirement of an $875.00 filing fee from a candidate for the office of Justice of the Supreme Court of Florida was not unconstitutional, unreasonable or arbitrary. This is clearly the majority view. See for example the following cases: Riter v. Douglass, 32 Nev. 400, 109 P. 444 (1910); Socialist Party v. Uhl, 155 Calif. 776, 103 P. 181; State ex rel. Pendergast v. Nichols, 50 Wash. 508, 97 P. 728; State ex rel. Thompson v. Scott, 99 Minn. 145, 108 N.W. 828; Kenneweg v. Alleghany County Com'rs, 102 Md. 119, 62 A. 249; Gray v. Kenney, 67 Cal.App. 2d 281, 153 P.2d 961 (1945).

■ The equal protection argument is fully met by the recent decision of an-

---

3. Subsequent to the entry of Judge McRae's July 17, 1970 order, the defendant filed his motion to dissolve the temporary restraining order and to dismiss the complaint which was carried with the case. As indicated, we dissolve the temporary restraining order and grant the motion to dismiss.

other three-judge court in Florida, Wetherington v. Adams, 309 F. Supp. 318 (N.D.Fla.1970). Whatever Fourteenth Amendment due process question is present in this case is also answered by *Wetherington;* citing Snowden v. Hughes, 321 U.S. 1, 7, 64 S.Ct. 397, 400, 88 L.Ed. 497 (1943), as is also any Fifth Amendment due process claim based upon an assertion that the right to run for office is a "property right".

*Wetherington* further points out that the filing fee precondition does not constitute a total denial to persons seeking to run of having votes cast for them and counted: they can run as write-in candidates by following the non-cost procedures of Florida Statute 99.023, F.S.A., which result in their consideration to the same extent as fee-paying candidates except that the name does not appear on the official ballot. This right to qualify as a write-in candidate may be considered to be illusory in an equal protection context, but there have been successful and near successful write-in candidates in general elections in Florida within the recent past. In any event, there is no constitutional requirement that the state print anyone's name on the ballot in a primary or general election. This is a privilege granted by the state upon meeting certain requirements of which the payment of a fee is one, since the printing is done at public expense. The requirement is reasonable and not invidiously discriminatory against the class of which plaintiff asserts he is one; viz: the class of persons desiring to run for office who do not possess the requisite financial ability to pay the statutory filing fees. The equal protection argument fails. See further Bodner v. Gray, supra; Gray v. Kenny, supra; Annot. 89 A.L.R.2d 864, 869 (1963).

We specifically hold that the 5% of annual salary fee requirement of Section 99.092(1), Florida Stat., F.S.A., is reasonable, not arbitrary and not unconstitutional. As was pointed out by District Judge Choate in an unreported case raising a similar claim, Diffenderfer v. Porter Homer (No. 68–455–Civ–EC, S.D. Fla. 1968):

> "The court further notes that the fee prescribed in § 99.092 (1), *supra,* is reasonable. Without a qualifying fee, the primary system in Florida would be paralyzed by an avalanche of candidates which would so confuse the use of the ballot as to make it inoperative from a practical standpoint. (Presently there is a widespread if not general complaint that the ballots are so unwieldy as to prohibit intelligent choice on the part of the individual voter.) Manifestly, one of the legislative purposes was to assure that whoever presents himself for candidacy does so in a serious vein.

> "Since a primary election is conducted largely for the benefit of political parties, it is not inappropriate that those who seek the political advantage of being a nominee of a major political party should be called upon to contribute in a small way toward the expenses incurred by the state and the political parties in the conduct of primary elections.

> "It is clear, on the basis of precedent and practicality, that the plaintiff is not entitled to * * * relief."

Plaintiff relies here on two recent three-judge court decisions from the Northern District of Georgia: Jenness v. Little, 306 F.Supp. 925 (1969) and Georgia Socialist Workers Party v. Fortson, 315 F.Supp. 1035. This reliance is misplaced. *Jenness* reached the Supreme Court of the United States and was disposed of sub nom Matthews v. Little, 397 U.S. 94, 90 S.Ct. 820, 25 L.Ed.2d 81 (1970) by dismissal as moot because the election had already been held. The Georgia District Court, in view of the imminence of the election had denied relief and attempted to rule

prospectively only. We understand the Supreme Court per curiam as declining to pass upon this ruling in the abstract and as leaving the questions attempted to be raised for future disposition. With respect to *Fortson* the three-judge panel was at pains to distinguish that case from Wetherington, *supra*, on which we principally rely.

Nor may the right to have one's name on a ballot as a candidate for public office without paying a qualifying fee be equated with the right to vote without being required to pay a poll tax. Plaintiff's attempt thus to rely on Harper v. Virginia State Board of Elections, 383 U.S. 663, 666–667, 86 S.Ct. 1079, 16 L. Ed.2d 169 (1966) will not do. Permitting candidates to qualify in unlimited number simply upon meeting age, residence and citizenship requirements is calculated by sheer unwieldly weight of numbers of names to lead to a breakdown of the election process and *destroy* the free right of suffrage which *Harper* champions. At least, there is some guarantee of serious intentions when a candidate or his supporters pay a qualifying fee. We think *Harper* may not be so applied, despite the contrary views of the *Jenness* court.

This complaint fails to state a claim upon which relief may be granted and will be dismissed with prejudice.

In consideration of the foregoing, it is

Ordered:

1. The temporary restraining order entered herein July 17, 1970 is dissolved. The defendant Adams, his employees or agents may remove plaintiff's name from the ballot unless the prescribed qualifying fee is paid by or before Wednesday, July 29, 1970, at 12:00 noon.

2. The motion to dismiss the complaint is granted and the complaint is dismissed with prejudice, without leave to amend, at the cost of the plaintiff.