STATE ex rel. W. F. McCARTHY v. JOHN H. MOORE.[1]

October 31, 1902.

Nos. 13,353—(269).

Primary Election—Political Parties.

The legislature may recognize the existence of political parties, and within reasonable limits regulate the means by which partisan efforts should be protected in exercising individual preferences for party candidates, which is the general purpose of the primary election law of this state.

[1] Reported in 92 N. W. 4.

Candidates—Regulations.

Under the constitution every person who is entitled to vote is eligible to office, but eligibility does not entitle a candidate to equal advantages in all the practical conditions under which he may seek office, nor prohibit the legislature from imposing fair and reasonable restrictions on an aspirant in soliciting the support of his fellow citizens at the polls.

Defeated Candidates.

Laws 1901, c. 216, § 9, which prohibits a candidate who sought a nomination from a political party at a primary election, who has been unsuccessful, from having his name printed on the official ballot as an independent candidate for the same office, is a reasonable regulation, since the blank space provided for by law in the official ballot, where the voters may write his name, protects his eligibility, and enables him to be elected if he receives the requisite votes.

Constitution.

Held, that portion of Laws 1901, c. 216, § 9, which prohibits a contestant for a party nomination at the primary election from having his name placed on the official ballot, is not obnoxious to section 7, article 7, of the state constitution.

Order of the supreme court directing John H. Moore, as auditor of Scott county, to show cause why a writ of mandamus should not issue requiring him to place upon the official ballot of Scott county the name of relator as an independent candidate for the office of superintendent of schools to be voted on at the November, 1902, general election. Order to show cause discharged.

H. J. Peck, for relator.

W. C. Odell and E. Southworth, for respondent.

LOVELY, J.

This is an order directed to the auditor of Scott county requiring him to show cause why he should not place the name of petitioner upon the county official ballot as an independent candidate for superintendent of schools in Scott county. At the last primary election held in that county the petitioner and one H. J. Fitzpatrick were properly placed upon the primary election ballot as the contesting candidates for the Democratic nomination for superintendent of schools. Fitzpatrick received a majority of the votes and has been duly accorded a place on the official ballot.

Petitioner thereafter caused a petition signed by more than ten per cent. in number of the voters voting at the last general election in his county to be presented to the respondent, demanding in due form a place on the official ballot as an independent candidate for the office he sought at the primary election as a Democrat. The auditor declined to accede to this request.

We have held that, petitioner's name having been placed upon the primary election ballot, at which he was a contestant for the Democratic nomination of school superintendent, he comes within the provision of Laws 1901, c. 216, § 9, which provides that

"No names of candidates　*　*　*　upon the primary election ballot　*　*　*　shall be placed upon the official election ballot unless such candidates have been chosen in accordance with this act, except in case of a vacancy occasioned by the death, removal or resignation," etc.

There is no vacancy by death or otherwise among the candidates for superintendent of schools in Scott county, and it is very clear that petitioner, having been an aspirant for the nomination of a political party at the primary election, after failure to obtain the same has no right to secure a place on the official ballot against the express terms of section 9, supra, unless upon the contention of petitioner that this statutory prohibition is in violation of section 7, article 7, of the constitution, which is as follows:

"Every person who, by the provisions of this article, shall be entitled to vote at any election, shall be eligible to any office, which now is, or hereafter shall be, elective by the people　*　*　* except as otherwise provided in this constitution, or the constitution and laws of the United States."

It is claimed for petitioner that the statute cited, in forbidding one who voluntarily becomes a candidate for a party nomination at the primary election and fails to secure it from having his name on the official ballot, interferes with and materially impairs his eligibility for the office for which he failed to be nominated; and it is further claimed that every person who is eligible thereto has the right to be a candidate for an office, whether he has already sought it as a party representative or not. The guaranty of the

organic law refers to essential qualifications, and dispenses with any other test to hold office (as birth, education, and the like) than the right to vote. It is not attempted therein to provide regulations for voting, nor the details of the candidacy of the aspirant. The right to vote and the right to hold office are declared to be co-ordinate. The methods by which these rights shall be protected and enforced are, of necessity, left to legislative action; but we shall readily assume that it is an inherent right of citizenship that only such a system of regulation be provided for as will be just and reasonable, and operate in its application to all voters and to candidates equally.

That any system will accomplish absolute equality in all things cannot be expected. Under the previous methods of voting there were many defects, which have been in a measure remedied by the primary election law; but no plan will ever place all candidates on a perfectly similar footing. The primary system was to secure inviolate secrecy to the voter, with protection from corrupt and improper influences. In it the essential utility of political parties is recognized, while the corrupt control by party managers of caucuses and conventions was sought to be obviated by legal recognition of political organization, and an attempted guardianship thereof, whereby the partisan voter could express his choice for his candidate under the protection of the state with absolute freedom in judgment by means similar in practice to the Australian ballot in use at general elections. Of necessity, there must be upon such a ballot a regular order in which the names shall be placed, and other features incident to the procedure that tend to invest incidental advantages upon one candidate over another; but it would seem proper that any candidate who seeks the assistance of the primary election law to aid him in securing party support should be bound by the obligations of good faith and the dictates of fair play to which he has voluntarily subjected himself.

It is said by this law to a candidate, "If you prefer the advantages of a party nomination which may be desirable, you may seek it; but if the state prepares and prints your ballot and regulates nominations so as to secure the utmost freedom of choice

among the members of your party, it does so upon the submission by you to the condition that, if you are unsuccessful, it will not thereafter print your name upon the ballot to defeat your opponent;" and it should not be said, because this is refused, that it is an unreasonable condition, but rather an imposition of even-handed justice that would have been bestowed upon his previous contestant had the result been otherwise. The conditions the aspirant accepts and the consequences he would desire to have imposed upon his adversary should impel him upon every sanction of justice and common honesty to submit to results he should have been prepared for, and it cannot be said either that in this effort at regulation of political methods the unsuccessful aspirant for a party nomination is deprived of the right to run for office, or the majority of voters deprived of his services in office, if they desire to secure them; for by the terms of Laws 1893, c. 4, § 25 (G. S. 1894, c. 1), it is provided that, after the name of the last named candidate for each office shall be placed on the ballot there shall be left as many blank lines thereon as there are like offices to be filled. That is, a blank line is to be left on the official ballot, where voters, or a majority of them, may express their preferences for a person by writing his name therein. That it is more advantageous to the candidate to have his name printed on the ballot instead of requiring it to be written is true, but in this case, under the prohibition of the statute to which he submitted, petitioner voluntarily denied himself that advantage. While he cannot have his name printed, because he has for supposed benefits surrendered that right, he is still eligible, and may aspire to the office, invite his fellow citizens to vote for him in the blank space provided for, and secure the office, if he can obtain the requisite support.

Order discharged.