[Civ. No. 1396.   Third Appellate District.—October 1, 1915.]

## ROBERT W. MILLER, Appellant, v. J. L. CHILDS, Respondent.

ELECTION CONTEST—OFFICE OF SUPERIOR JUDGE—ACTS IN VIOLATION OF PURITY OF ELECTION LAW—FINDINGS CONCLUSIVE.—In this contest of the election of a judge of the superior court based upon the declared ineligibility of the contestee by reason of certain acts of moral turpitude in violation of the purity of election law and of the fact of his defeat for the nomination at the primary election, it is held, that while some of the acts set out in the findings were of questionable propriety and likely to inspire a degree of distrust and suspicion on the part of the law-abiding and upright citizens of the community, it cannot be said that they are entirely irreconcilable with freedom from moral turpitude, and therefore, under the familiar rule, the court is bound by the conclusions of the trial judge.

ID.—DEFEATED CANDIDATE AT PRIMARY ELECTION—WRITING IN OF NAME ON BALLOT—RIGHT OF VOTER.—While a candidate for the office of

superior judge who is defeated for the nomination at the primary election cannot have his name printed on the official ballot, his name may be written upon the ballot by the voters.

ID.—CANDIDATE FOR JUDICIAL OFFICE—CONSTRUCTION OF DIRECT PRIMARY LAW.—The provision of section 23 of the Direct Primary Law (Stats. 1913, p. 1404) that in case there is but one person to be elected at the general election to a judicial office, any candidate who received at the primary election a majority of the total number of votes cast for all the candidates for such office shall be the only candidate for such office at the ensuing election, in view of the provisions of the constitution relating to the manner of election and the qualifications of a superior judge, is to be construed as meaning that such candidate shall be the only candidate *placed on the official ballot.*

APPEAL from a judgment of the Superior Court of Del Norte County. W. A. Beasley, Judge presiding.

The facts are stated in the opinion of the court.

James M. Hanley, and G. A. Webb, for Appellant.

Pierce H. Ryan, and Geo. W. Howe, for Respondent.

BURNETT, J.—Herein is involved the election of a judge of the superior court of Del Norte County. The contest was based upon the declared ineligibility of respondent by reason of certain acts of moral turpitude in violation of the purity of election law and of the fact of his defeat for the nomination at the primary election held on August 25, 1914.

There was suitable averment of the corrupt character of most of said acts to bring them within the condemnation of the law. If said acts were performed for the purpose and with the motive claimed and averred by appellant, no doubt could be entertained that respondent would be legally and morally disqualified for the position which he holds. The findings of the court, however, present a very different case from that set out in the complaint. Many of the facts, indeed, upon which contestant relied are found to be true, but the court in effect acquitted contestee of any intentional wrongdoing. We think it cannot be said that the acts themselves, set out in the findings, are necessarily unlawful and wicked. Some of them may be and, doubtless, were of questionable propriety. They were likely to inspire a degree of

distrust and suspicion on the part of the law-abiding and upright citizens of the community. The probable consequence of some of the things done by respondent to secure his election would be to bring the court into a measure of disrepute and to lead many to doubt the integrity and honor of the judge. But as it cannot be said that they are entirely irreconcilable with freedom from moral turpitude, under the familiar rule we are bound by the conclusion of the trial judge. In other words, the determining feature is the motive and purpose characterizing the acts, and this consideration has been resolved by the trial court in favor of respondent.

We proceed to notice these findings. The following have been subjected to severe criticism by appellant:

"3. That subsequent to the entry of said judgment and decree in the matter of the contest of said primary election, the contestee herein organized and caused to be organized, in and throughout the county of Del Norte, an organization of electors, known and designated as 'The J. L. Childs Write-in Club,' which said club consisted of seven hundred and fifty-one persons, electors, of said county, each of whom, said electors, made, executed, and signed, and returned to the said contestee a pledge card, previously sent to them by said J. L. Childs, in the words and figures following, to wit:

"'Del Norte County, Cal.................1914.

"'I hereby make application to become a member of the J. L. Childs Write-in Club, and further I hereby pledge myself to write the name of J. L. Childs on the ballot to be voted November 3, 1914, for the office of Superior Judge of the State of California in and for the County of Del Norte, and that I will do all within my power to secure his election to said office.'

. . . . . . . . . . . . . . . .

"That the said pledge cards so sent by contestee to the members of the said 'J. L. Childs Write-in Club,' was accomplished by a letter from the contestee, which said letter was and is in the words and figures following, to wit:

"'Crescent City, Cal., Sept. 26th, 1914.

"'Dear Friend: A great many of my friends have most earnestly requested me to continue the race for Superior Judge and to do all in my power to have the voters write in my name on the November ballot for Superior Judge. I do not want to do so, however, unless I feel I have the expres-

sion of a sufficient number of my friends on the subject to warrant me in doing so.

" 'If you are willing to continue to support me by voting for me on November 3rd, it will help me very materially for you to sign the enclosed card as a member of the J. L. Childs Write-in Club and return the card to me at your earliest convenience.

" 'These Membership Cards will be considered strictly private by me and your name will not be divulged to the public, unless you otherwise direct.

" 'Hoping that you may decide to sign the enclosed card and return the same to me, I am

" 'Yours Very Truly,

" 'J. L. Childs.'

"That pursuant to the pledge asked for by the contestee in said letter and so made and given by some seven hundred members of the said 'J. L. Childs Write-in Club,' a plan of campaign work was inaugurated by the contestee and the members of the said 'J. L. Childs Write-in Club,' to conduct the campaign of said contestee to secure the votes of electors of said county for J. L. Childs and stenciled cards were prepared and distributed among voters and electors of said county, which cards were printed under the direction of said contestee, 'J. L. Childs'; which said letters 'J. L. Childs,' were cut out with some sharp instrument, wherewith said card so stenciled by cutting out the letters 'J. L. Childs,' by the use of a pencil, the name, 'J. L. Childs,' could be and was printed by electors on nine ballots cast at said election in said county for said J. L. Childs. The court finds, however, that the ballots bearing said name so stenciled in as aforesaid were not so stenciled for the purpose of distinguishing said ballots, or any of them.

"4. The court finds that prior to the trial of this contest, the contestee burned and destroyed all the membership cards referred to in the preceding finding, some seven hundred in all, and whereby all written evidence of the membership of said 'J. L. Childs Write-in Club' was destroyed."

No doubt, most candidates for high judicial position who are keenly sensitive to the ethical requirements of the profession and are actively jealous of its honor would refrain from seeking such written promise of support and would not pursue such method of campaigning, but we cannot say that

there is thereby revealed any violation of the moral or criminal law. The solicitation of voters is condemned by the law when it is accomplished by "force, threats, menaces, bribery, or any corrupt means" (Pen. Code, sec. 53), but none of these elements is disclosed by the finding before us. An honest motive must be presumed and we cannot say that the promise in question was not entirely voluntary. A situation somewhat embarrassing and one calculated to create a doubt in subsequent litigation as to the impartiality of the judge who has been elected by those pledging themselves in writing to his support and who may thereafter be litigants in his court, is presented by such instance, but it is not deemed sufficient to nullify an election. Neither does the circumstance necessarily violate the provision of the law as to the secrecy of the ballot. No expedient was adopted by which it could be determined that the voter had kept his promise. If this last statement does not apply to the nine "stenciled" votes it is sufficient to say that the penalty would be their rejection and the result of the election would not thereby be affected, it being found that respondent received six hundred and twenty and appellant five hundred and sixty-eight votes. It may be said also that the destruction of these written promises by respondent does not demand the overthrow of the election. The most commendable act in connection with the transaction was their destruction. Their entire effacement from the memory of the judge, no doubt, would tend to remove a sore temptation to prejudice and partiality and would add to his efficiency on the bench. It is to be hoped that with their destruction the names attached to these pledges were entirely forgotten.

Less objectionable than the foregoing are the facts set forth in findings 6 and 7 as to the solicitation of the votes of Levi Chaney and Jane Young. It is expressly found that there was no inducement offered in either case but simply a request for their support.

Finding 8 is as follows: "The court finds that a few days prior to the general election held on the 3d day of November, 1914, at which said general election the said contestee, J. L. Childs, was a candidate for the office of judge of the superior court aforesaid, one H. C. Brown had been tried and convicted in the superior court of said Del Norte County, said contestee presiding at said trial, of a misdemeanor, on the

verdict of a jury impaneled in said cause. That upon the
return of the verdict by said jury, finding the said Brown
guilty as charged, the offense charged being that of selling
liquor in dry territory and a former conviction, and the
penalty therefor being a fine, or imprisonment or both fine
and imprisonment, sentence was deferred until after the said
general election. That between the date of conviction and
the date of the said general election, the said Brown was can-
vassed by one Ed Plaisted, as was also the wife of the said H.
C. Brown, to wit: Elva E. Brown, each of whom were, and
are electors of said Del Norte County. In order to induce
the said H. C. Brown and the said Elva E. Brown to vote at
said general election for said contestee for judge of the
superior court aforesaid, the said Plaisted said unto the said
H. C. Brown, 'You will get no jail sentence if you come
through and support J. L. Childs for judge, but you must
convince me that you voted for Childs. You must so mark
your ballot that I can identify the same when the ballots are
counted by the election board of Smith River precinct.'
That the said H. C. Brown thereupon promised and agreed
to support the said contestee at said election for said office of
judge, and in order that said contestee might know that he,
said Brown, had voted for contestee, agreed with the said
Plaisted to write upon his ballot to be voted at said general
election an identification mark, said identification mark to be
the words, 'John Crook' for constable of Smith River town-
ship, and the court finds that the said Brown did write upon
his ballot the said identification mark so agreed upon and
that he voted for the said contestee for said office of judge of
the superior court. And the court further finds that the
words, 'John Crook,' were written upon one other ballot in
said election precinct. But the court finds that the said con-
testee, J. L. Childs, had no knowledge of the identification
mark so agreed upon by said Plaisted and Brown; nor was
the said Plaisted, by the said contestee authorized by said
Childs to make such agreement with the said Brown. The
court finds, however, that in subsequently pronouncing judg-
ment against said Brown no 'jail sentence' was given or
made.''

Of course, if respondent had authorized Plaisted to make
such promise the former would be unfit to occupy the bench
and should be removed, but the trial court found that J. L.

Childs had no knowledge of the transaction and did not authorize said Plaisted to make such agreement. We must accept this as true. It is not necessarily irreconcilable with the following finding: "that in subsequently pronouncing judgment against said Brown no 'jail sentence' was given or made." The latter would afford ground for argument as to respondent's participation in the corrupt proposal of Plaisted but it would be not inconsistent with respondent's innocence of any culpability.

Other suspicious circumstances are set forth in finding 9 as follows: "The court finds that immediately prior to the general election held on the 3d day of November, 1914, and while the said contestee was a candidate for the said office of judge of the superior court aforesaid, one Ernest McDonald had been and was then held for trial in said superior court, the contestee herein presiding, on an information duly filed by the district attorney of said county, in said court, and whereby the said Ernest McDonald was accused of the crime of murder; that the contestee as presiding judge of said court, deferred trial of said cause until after the said general election, so to be held on the 3d day of November, 1914. That after said general election the said Ernest McDonald was tried in said court by a jury, which said jury returned a verdict of manslaughter; whereupon the contestee sentenced the said McDonald to a term of five years in state's prison, but immediately thereafter placed the said McDonald on probation and set him at liberty. That at the said trial thirteen witnesses were in attendance on the court, each of whom was by the court awarded compensation as follows": (Here follow the amounts allowed the respective witnesses.) "The court finds that none of said witnesses were required to travel more than one hundred miles. That each of said witnesses was in attendance upon the court for two days and no more. But the court finds that none of the several amounts was allowed by the court with intent upon the part of the court to bribe said witnesses, or any of them, or any other person."

There may have been good reasons for the conduct of the judge as to the McDonald case. We must assume there were. His action in admitting the defendant to probation was within the sanction of the law and we must assume that he was animated by proper motives. His allowance of the fees

to witnesses is the more startling because some of them were in excess of the statutory amount. We are left only to conjecture as to the reason for this excessive award of the public funds but the court has found that there was no intention "to bribe said witnesses." We must assume that the action was the result of a misunderstanding of the law rather than the existence of any intentional wrong doing. Indeed, the answer of contestee averred that said allowances were in strict accordance with the requirement of the law, and probably it appeared to the trial court that respondent so believed. As to this, it may also be said that contestant failed to allege any corrupt motive as to these allowances and in that respect the complaint falls short of a sufficient ground for contest.

The tenth finding may be dismissed with the statement that the court negatives the connection of respondent with any promise to Mrs. Louise Nickerson made by Mrs. O. A. Murphy, and the same may be said as to the action of one W. A. Howe in writing to a certain election officer. No doubt, one often suffers from the action of his friends, but the basis for legal or moral responsibility is removed here by the finding that respondent had no knowledge of such conduct.

The twelfth finding is as follows: "The court finds that prior to the election of November 3, 1914, and before the August primary election, of August 10, 1914, and while said Childs was a candidate at said primary election for nomination for said judgeship, he canvassed one T. L. Cousino, a qualified voter of said county, and sought to procure the said Cousino's support at said primary election. That the said Cousino referred to a land transaction between the said contestee and said Cousino that had occurred some years before, in which said transaction the said Cousino seemed to think that Childs, the contestee, had gotten the better of him. That Childs, the contestee, had obtained of and from the said Cousino in the said land transaction, a deed to pieces and parcels of land amounting to about four acres, for which Cousino claimed to have received no compensation, and informed the contestee that by reason of said transaction he did not feel that he could support him. That the contestee thereupon agreed to reconvey and did immediately thereafter reconvey unto the said Cousino a portion of the said land so conveyed by Cousino to Childs, and which portion contained

about one-half acre of land and no more. That the contestee stated to Cousino at the time of the delivery of said deed that the deed was not given for the purpose of buying votes; that he, contestee, would not give five cents for all the votes in Del Norte County. That Cousino voted at the said general election. The court finds that the making of said deed was not done with intent to influence the vote of the said T. L. Cousino in favor of the said contestee."

An honest man, whether a candidate for office or not, might execute such deed. The unfortunate circumstance is as to the time just prior to the election. But we cannot say that the inference of the trial judge that it was done with no intention to influence the vote is unreasonable and not to be entertained.

Another finding is of a different character and involves the construction of a section of the primary election law. This is the finding: "That at the August primary election held throughout the state of California on the 25th day of August, 1914, the said contestant, Robt. W. Miller, and the said contestee, J. L. Childs, were each respectively candidates for nomination to the office of judge of the superior court of California, in and for the said county of Del Norte, and that at said primary election contestant received a majority of all the legal votes cast for said office in said Del Norte County, and was subsequently by the board of supervisors sitting as a board of canvassers, declared to be the duly elected nominee for said office of judge of the superior court. That subsequent to the date of the declaration of election by the said board of canvassers the contestee therein contested the election of said Robt. W. Miller, and that thereafter such proceedings were had in the matter of said contest, that a judgment of the superior court, in and for said county, was duly made and given wherein and whereby it was duly adjudged and decreed that contestant herein was duly and regularly elected at the said August primary as the nominee for said office of judge."

Section 23 of the Direct Primary Law (Stats. 1913, p. 1404), provides as follows: "Except in the case of a candidate for nomination to a judicial office, school office, county office, or township office, the person receiving the highest number of votes, at a primary election as the candidate for the nomination of a political party for an office shall be the

candidate of the party for such office, and his name as such candidate shall be placed on the official ballot voted at the ensuing election. . . . In the case of a judicial office, school office, county office, or township office, the candidates equal in number to twice the number to be elected to such office, or less, if so there be, who receive the highest number of the votes cast on all the ballots of all the voters participating in the primary election for nomination to such office, shall be the candidates for such office at the ensuing election, and their names as such candidates shall be placed on the official ballot voted at the ensuing election; *provided, however,* that in case there is but one person to be elected at the November election to a judicial office, school office, county office, or township office, any candidate who receives at the August primary election a majority of the total number of votes cast for all the candidates for such office shall be the only candidate for such office at the ensuing election. . . .''

The argument is: "The court will observe that the legislature has specialized on judicial offices, school offices, county offices, and township offices, where but one person is to be elected, and instead of saying the name shall be placed upon the ballot distinctly specifies that the party receiving the majority of all the votes cast at said primary election for all the candidates for any such office shall be the only candidate for such office at the ensuing election. It is clear that the legislature intended to distinguish in cases where but one person is to be elected to a judicial office as against cases where more than one person is to be elected to such office or offices.

"Where more than one person is to be elected it will be observed that the language used by the legislature specially provides that in such latter case the names of the persons receiving the highest number of votes at the primary election shall be printed upon the official ballot; whereas if but one officer is to be elected the words 'Official Ballot' printed upon the official ballot are dropped, and in mandatory terms—or rather, prohibitory terms—the legislature prescribes that the party prevailing at such primary election shall be the only candidate at the ensuing general election. The term 'candidate' as defined by the authorities cited by appellant, meaning one who stands for votes."

There is plausibility in the contention but we cannot accept this as a sound interpretation of the said statute.

We need not repeat the oft quoted and familiar canons of interpretation and we may admit the primary definition of "candidate" to be as claimed by appellant. We call attention, however, to the fact that appellant's construction of this statute would nullify other provisions of the election law, as follows: "Nothing in this code contained shall prevent any voter from writing upon his ballot the name of any person for whom he desires to vote for any office and such vote shall be counted the same as if printed upon the ballot, and marked as voted for" (Pol. Code, sec. 1196), "or he may vote for a candidate or person whose name is not printed in the ballot by writing a name for such office in the blank space left therefor, in which latter case the vote of such voter for that office shall be counted for the person whose name is so written." (Pol. Code, sec. 1205.) "Any name written upon a ballot shall be counted for such name for the office under which it is written." (Pol. Code, sec. 1211, subd. 1.) Section 1197 of the Political Code directs that blank spaces shall be left on the ballot and that printed instructions shall be given the voter how to vote for a person whose name is not on the ballot.

These various provisions must, of course, be considered in determining the intention of the legislature, and we are satisfied that the particular section in controversy here can be reasonably interpreted so as not to create any conflict in the law. It is to be remembered, also, that we are considering a law that deals with *nominations* and not *elections* for office. Wide authority is conferred by the constitution upon the legislature in providing regulations for nominations at the primary and fixing the eligibility of candidates for such nominations. (Const., art. II, sec. 2½.) But this primary cannot constitute the election even of judge, as the constitution (art. VI, sec. 6) provides: "There shall be in each of the organized counties . . . of the state a superior court, for each of which at least one judge shall be elected by the qualified electors of the county or city and county, at the *general state election.*"

The constitution also (art. VI, sec. 23) provides the qualifications for election to the office of superior judge. That

condition is that he shall have been admitted to practice before the supreme court of the state.

It is obvious that appellant's interpretation of said provision of the primary election law would make said primary virtually an election and would add to the constitutional qualifications for election to the office of judge another, namely, that he shall be the successful candidate at the primary. Or, applying the condition to respondent, he is disqualified for election to the office for the reason that he was beaten for the nomination at the primary election, whereas the constitution provides the only disqualification to be his not having been admitted to practice before the supreme court. It is not to be presumed that the legislature intended to run counter ·to these two constitutional provisions. On the contrary, we think the reasonable construction of said provision calls for the implication of the phrase, "placed on the official ballot," after the words, "such office," so that the amplified clause would read: "Provided, however, that in case there is but one person to be elected at the November election to a judicial office, school office, county office or township office, any candidate who receives at the August primary election a majority of the total number of votes cast for all the candidates for such office shall be the only candidate for such office *placed on the official ballot* at the ensuing election."

The conclusion we have reached, it may be added, seems to be in harmony with the views expressed by quite a number of authorities of which we refer to *State* v. *Moore*, 87 Minn. 308, [94 Am. St. Rep. 702, 59 L. R. A. 447, 92 N. W. 4]; *Winston* v. *Moore*, 244 Pa. 447, [Ann. Cas. 1915C, 498, L. R. A. 1915A, 1190, 91 Atl. 520]; *People* v. *McCormick*, 261 Ill. 413, [Ann. Cas. 1915A, 338, 103 N. E. 1053].

In the first of these, the language of the statute is somewhat different from that before us, but we think it is true here, as there, that "while the candidate cannot have his name printed, because he has for supposed benefits surrendered that right, he is still eligible, and may aspire to the office, invite his fellow-citizens to vote for him in the blank space provided for, and secure the office, if he can obtain the requisite support."

The Pennsylvania case contains a learned discussion of the constitutionality of the primary election law, and it involved

directly the construction of the following provision relating to the nomination and election of judges of courts of record: "Provided, that whenever, at any primary, any candidate for nomination to any of the aforesaid offices to which but one person is to be elected at the succeeding election, shall receive a number of votes greater than one-half of the total number of votes cast for such office at such primary, and greater than one-half of the number of ballots cast in the political district or division within which the nomination is to be made, *such candidate shall be the sole nominee for such office;* and his name and none other shall be printed as candidate for such office upon the official ballots for use at such succeeding election." (Sec. 13 of the act of July 24; 1913 [P. L. 1001], known as the Non-partisan Ballot Law.)

In commenting upon this provision it is said by the court: "This court has decided that the limitations imposed must not amount to a denial of the franchise itself, and this is the extremest limit to which our cases have gone. It cannot be reasonably said that the exercise of the elective franchise is denied to the individual voter by the limitation contained in the provision to section 13. *The elector may vote* for the name thus printed upon the ballot, or he *may write in the name of any person for whom he may choose to vote,* and thus he is not denied the right to exercise the franchise of voting in accordance with his conviction, preference or sense of public duty. It is true that the candidate who receives more than one-half the votes polled in the election district at the primary has an advantage over all others, but this is an advantage given him by the votes of a majority of the electors who performed their public duty by attending the primary and exercising their right to vote. This advantage results from a direct vote of the people, and those who are dissatisfied with the nomination thus made are not concluded by it but *may vote for a defeated candidate,* or for any other person for whom they desire to vote, by pursuing the method pointed out in the act."

In the Illinois decision it is held that "All persons are equally eligible to office who are not excluded by a constitutional or legal disqualification, and eligibility does not depend upon the right of suffrage, and the people have the right to elect to office any eligible person. . . . Where the constitution fixes the qualifications for public office, the legislature

may not change or add to them, unless the constitution confers that power,'' and ''Though the legislature may determine the manner of conducting elections, it may not interfere with the freedom of elections guaranteed by the constitution, by imposing qualifications not authorized by the constitution.''

We conclude that the findings thus adverted to would not support a judgment for appellant, and it having been found that respondent possessed the requisite qualifications for the office and received, as we have seen, a majority of the legal votes cast, and there being no question of the sufficiency of the evidence to support the findings, the conclusion of the trial court, we think, must be upheld.

Respondent contends that the brief of appellant should be stricken from the files because of contemptuous reference therein to the trial court. But, while the language complained of is somewhat intemperate, we cannot bring ourselves to the belief that any reflection upon the integrity of the trial judge was intended, as, indeed, we have discovered no ground for any such reflection. The motion will therefore be denied, and the judgment is affirmed.

Chipman, P. J., and Hart, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on November 29, 1915.