[No. 18972. Department Two. December 4, 1924.]

THE STATE OF WASHINGTON, *on the Relation of Burton J. Onstine, Plaintiff*, v. ELMER H. BARTLETT *et al., Respondents.*[1]

ELECTIONS (21) — NOMINATION BY PRIMARY ELECTIONS—JUDGES —UNOPPOSED MAJORITY NOMINEE — STATUTORY AND CONSTITUTIONAL PROVISIONS. Rem. Comp. Stat., § 5212, providing that, where there are two or more superior judges to be elected, their positions shall be numbered, and candidates for the offices shall state and the bal-lots shall designate the numbered position which they seek to fill, is not unconstitutional as in violation of Const. Art. 4, § 5, provid-ing that there shall be one superior court in each of the counties.

SAME (21). Rem. Comp. Stat., § 5212, providing that a majority nominee, at a primary election to nominate candidates for the superior court, shall go on the ballots at the general election un-opposed, making in effect the nomination equivalent to an election, is not unconstitutional as in violation of Const., Art. 4, § 5, provid-ing that judges shall be elected at the general state elections, or Art. 6, § 8, providing for general elections every four years on the Tues-day succeeding the first Monday in November; in view of the right given by Rem. Comp. Stat., §§ 5212, 5272, and 5282, to electors to vote for any person of their choice.

Certiorari to review a judgment of the superior court for Spokane county, Blake, J., entered October 11, 1924, denying an application for a writ of mandamus to compel county officers to place a name on the ballots at the general election. Affirmed.

*Fred M. Williams, W. C. Jones*, and *Del Carey Smith*, for relator.

*Chas. H. Leavy* and *E. J. Farley*, for respondents.

*The Attorney General* and *E. W. Anderson, Assist-ant, amici curiae.*

MACKINTOSH, J.—As far as material to be considered here, § 5212, Rem. Comp. Stat. [P. C. § 2259], provides that:

[1]Reported in 230 Pac. 636.

"Where there are to be elected at any general election one or more judges of the superior court of any county or judicial district the candidates for each respective office whose names are to be placed on the general election ticket shall be determined as follows: Not less than ten days before the time for filing declaration of candidacy, the secretary of state or the county auditor, as the case may be, shall designate by number each position to be filled upon the superior court of the county or judicial district. Each candidate at the time of filing of his declaration of candidacy shall designate by the number so assigned, the position for which he is a candidate and the name of such candidate shall appear on the ballot only for such position    .    .    .    where any candidate for such office shall receive a majority of all votes cast at such primary election for such office, the name of such candidate receiving such majority shall be printed separately on the general election ballot under the designation 'Vote for One' and the name of no opposing candidate shall be printed on such ballot in opposition to such candidate, but one space shall be left following such name in which the voter may insert the name of any person for whom he wishes to cast his ballot."

The law also provides the method by which a majority shall be determined. The relator attacks the two provisions contained in this section, alleging that each of them is unconstitutional.

First: The provision for the separation of the superior court into positions for the purpose of election is attacked on the ground that § 5, article 4 of the state constitution provides that, in each of the counties of this state, there shall be *a superior court*. Under this provision, in *State ex rel. Lytle v. Superior Court,* 54 Wash. 378, 103 Pac. 464, a law was declared unconstitutional which attempted to delegate to county commissioners the power to divide counties into judicial districts and to establish a superior court in each district. But confusion should be avoided between

"judges" and "courts." *Shepard v. Gove,* 26 Wash. 452, 67 Pac. 256; *State ex rel. Romano v. Yakey,* 43 Wash. 15, 85 Pac. 990, 9 Ann. Cas. 1071; *In re Newcomb,* 56 Wash. 395, 105 Pac. 1042. The court is one entity of which there may be several judges; and the legislature having been given power to designate the number of judges constituting a court in each county, there seems no reason why the same body may not enact such reasonable procedure as it sees fit for the election of these several judges. The supreme court of Iowa, in *Schaffner v. Shaw,* 191 Iowa 1047, 180 N. W. 853, said:

"The judges are but organs of the court, the conduits through which it speaks. The court and judge are by no means a unit.    .    .    .    The increase or diminution of the number of judges    .    .    .    is of    .    .    .    the judges, but not of court.    . .    ."

If the relator's argument is correct, the superior court in each county, as provided by the constitution, is a single office, and the various acts which increase the number of judges in the counties of the state would have been unconstitutional, as providing more courts than called for by the constitution. The true interpretation is that the court in each county is a single entity of which there are as many officers as there are judges provided by law. In 15 C. J. 869, it is said:

"It frequently happens that a court is divided into a number of different departments, parts, or divisions, and the legislature has power so to regulate the business of a court in the absence of any constitutional prohibition. But the court remains a unit notwithstanding such a division."

This court, in *State ex rel. Shepard v. Superior Court,* 60 Wash. 370, 111 Pac. 233, 140 Am. St. 925, said:

".    .    .    the manner in which the franchise shall be exercised is purely statutory. It is not within

the power of the legislature to destroy the franchise, but it may control and regulate the ballot, so long as the right is not destroyed or made so inconvenient that it is impossible to exercise it. It follows, then, that that which does not destroy or unnecessarily impair the right must be held to be within the constitutional power of the legislature.''

The supreme court of Minnesota, in *State ex rel. Nordin v. Erickson,* 119 Minn. 152, 137 N. W. 385, had before it the constitutionality of a law which provided that where there were two or more offices to be filled they should be classified and numbered, one, two, etc., using as many classes and numbers as there were offices to be filled, and that every person filing as a candidate for any such office should designate the number for which he desired to file and that his name should be placed on the ballot under such designated title. This act was sustained, the court saying:

''The constitution does not attempt to regulate the exercise of the right of eligibility to office or to vote, but they are, of necessity, left for legislative action. Therefore the legislature may make and impose such reasonable regulations and conditions which it deems necessary to secure a pure and orderly election and to guard against unfair combinations, undue influence and coercion, although they may incidentally affect the right of an elector to vote, or his opportunities for securing an election to office. Such regulations, however, must be reasonable, uniform and impartial; they must not be such as to defeat indirectly the constitutional rights of an elector or unnecessarily obstruct the exercise thereof     .     .     .     the question then is whether the provisions of the primary election statute, as to grouping candidates, are, when tested by the rule stated, so clearly and palpably repugnant to the guaranties of the constitution, with reference to the right to vote and eligibility to office, as to leave no fair doubt of their invalidity.     .     .     .     It is urged by the relator that the provision of the primary law

providing for classification imposes conditions and restrictions as to an elector's eligibility to office, in violation of the constitution, as it forces him to elect in which one of two or more classes he will seek a nomination. This does not affect his eligibility to office at the election, for the reason that the blank space required to be left on all official election ballots enables him to aspire to the office and invite his fellow citizens to vote for him by writing his name in the blank spaces on the ballots.    .    .    .    The relator further contends that he was denied the right to file as a candidate because he refused to designate the class in which he desired to file, which disfranchises him, contrary to our bill of rights (article 1, § 7, state constitution). He and every other elector might with equal force claim that they were disfranchised because they refused to pay the filing fee, or to comply with any other reasonable regulation, of the exercise of the right to be elected to office. The claim of disfranchisement, so far as it relates to the primary election statute, is without merit."

In the New York case of *Burr v. Voorhis,* 229 N. Y. 382, 128 N. E. 220, a candidate demanded that the ballot be prepared so that he could run against any one of several incumbents. The court said:

"The right to vote for or the right to be voted for as a candidate for a public office is defined and regulated by the constitution and legislative enactments of the state. In so far as the constitution does not particularly designate the methods in which the right shall be exercised the legislature is free to adopt concerning it any reasonable, uniform, and just regulations which are in harmony with constitutional provisions. The regulation of elections, the description of the ballots, the prescription of the conditions upon which and the manner in which the names of candidates or nominees may appear upon the official ballots, the method of voting, and all cognate matters are legislative and not justiciable unless the constitution is violated. We are to determine from the constitution and relevant statutes whether or not there is the one office of justice of

the supreme court, shared in by all the justices who constitute the supreme court. To assume that each justice is an incumbent of an independent and particular office, and thereupon apply the enactments, is a begging of the question. . . . It [the constitution] does not intend or purport to prescribe the method or manner by which they shall be so selected. It left to the legislature, within the terms of the constitution, the adoption of such reasonable regulations and restrictions as to nominations and elections as might be deemed necessary to secure and facilitate an efficient, honest, and patriotic exercise of the elective franchise. . . . Turning to the statutory provisions, it is found they are equally devoid of enactment that each justice is the incumbent of the office of justice of the supreme court, single to him. The source of the nomination and election of a justice is, of course, the petition for the designation of a candidate for nomination and the primary election, or an independent certificate of nomination. Election law (Consol. Laws, c. 17), §§ 46, 122. The statutory provisions prescribing the methods in which candidates secure places upon the primary ballot do not declare or hint that, under the conditions here or analogous conditions, the petition or certificate must or may lawfully state that the candidate for a public office is such 'as the successor of' or 'to succeed' one of several incumbents of the office whose terms are expiring. . . . It is axiomatic that there must be limitations and systematizations in the exercise of the elective franchise in order that it may be practicable, efficient, intelligent and honest. Legislative regulations which are reasonable and effect equality, as far as may in practical working be, cannot be rightfully said to contravene any constitutional right. The courts cannot condemn restrictions for a legitimate purpose and reasonably adapted to effect the purpose. The method of the respondents stands those tests. The wit of man cannot devise a method of transcending all inequality and discrimination. Doubtless the method advocated by the appellant and which he deems the more reasonable might have been legally adopted.''

From these authorities, it would therefore seem to follow that the first portion of § 5212, Rem. Comp. Stat., *supra,* is constitutional.

Second: It is further claimed that the second portion of § 5212, Rem. Comp. Stat., *supra,* providing for a majority nominee going on the ballot unopposed is unconstitutional. Relator calls attention to § 5, article 4, of the constitution which provides that "judges shall be elected   .   .   .     at the general state elections," and § 8, article 6, of the constitution, which provides that a general election shall be held every four years, on the Tuesday succeeding the first Monday in November, his argument being that, under the second portion of § 5212, *supra,* a majority nomination for judge is equivalent to his election, and therefore that he is elected at a time other than that prescribed by § 5, article 4, of the constitution for the election of such officers. But the second portion of § 5212 does not provide for the election, the majority nominee is not declared elected judge, but it is merely provided that a person receiving a majority vote for the judicial office shall have his name printed on the official ballot unopposed, with a blank space following it in which any elector may vote for anyone whom he desires. As was said by this court, in *State ex rel. Zent v. Nichols,* 50 Wash. 508, 97 Pac. 728:

"But it deprives no one of the right to vote for the candidate of his choice at the general election. He may write or paste the name of his candidate thereon and have the same counted as rightfully as if his name were printed on the ballot. This is a right the courts are uniform in maintaining.   .   .   .     Since, therefore, the elector is not deprived by this act of voting at the general election for the candidate of his choice, we hold the act within the rightful powers of the legislature."

In 15 Cyc. 332, it is said:

"A statute which provides that one who has voluntarily become a candidate for a party nomination at the primary election and has failed to secure it shall not have his name on the official ballot is neither obnoxious to the constitution nor unreasonable, for he is still eligible to office, and the electors are at liberty to write his name on the ballot if he can induce them to do so."

And in 9 R. C. L. 1056:

"In the case of a nonpartisan ballot it has been considered reasonable to limit the names of the candidates for an office on an official ballot to the two who polled the highest vote at a primary election, and also to limit the names to one when the candidate receives more than one-half of the votes polled for the office at the primary."

A case squarely in point was decided in *Winston v. Moore*, 244 Pa. St. 447, 91 Atl. 520, where there was under consideration an act of the Pennsylvania legislature identical in its effect with the second portion of § 5212; and the supreme court of that state, in an elaborate and well reasoned opinion, considers the question as it is affected by provisions of the Pennsylvania constitution similar to our constitutional provision, § 19, article 1, which provides that "all elections shall be free and equal and no power, civil or military, shall at any time interfere to prevent the free exercise of the right of suffrage;" and holds that the act is a proper exercise of the legislative power and violates no constitutional provision. The temptation is strong to quote extensively from this opinion as the argument is extremely convincing and clearly stated, the court saying:

" 'But how shall this freedom and equality be secured? The constitution has given no rule and furnished no guide. It has not said that the regulations to effect this shall be uniform (a question discussed in

another part of the present opinion). It has simply enjoined the duty and left the means of accomplishment to the legislature. The discretion therefore belongs to the general assembly, is a sound one, and cannot be reviewed by any other department of the government, except in a case of plain, palpable, and clear abuse of the power which actually infringes the rights of the electors.'

''The power to regulate elections is legislative, and has always been exercised by the lawmaking branch of the government. Errors of judgment in the execution of the legislative power, or mistaken views as to the policy of the law, or the wisdom of the regulations, do not furnish grounds for declaring an election law invalid, unless there is a plain violation of some constitutional requirement.

''The mandate of the constitution is that elections shall be free and equal, but how shall they be made free and equal? The constitution is silent as to the method of securing the desired result. The declaration itself would be a vain thing in the absence of positive law to make the mandate effective. Who makes the law? The legislature. As was well said by Justice Agnew in the case above cited, the 'constitution has given no rule and furnished no guide,' to determine how the freedom and equality of elections shall be enforced. It enjoins the duty in the abstract, but leaves the means of accomplishment in the concrete to the legislature. This necessarily gives the legislature a wide field for the exercise of its discretion in the framing of facts to meet changed conditions and to provide new remedies for such abuses as may arise from time to time. The power to regulate elections is a legislative one, and has been exercised by the general assembly since the foundation of the government. . . . Legislation may be enacted which regulates the exercise of the elective franchise, and does not amount to a denial of the franchise itself. . . . The declaration in the bill of rights that elections shall be free and equal means that the voter shall not be physically restrained in the exercise of his right of franchise by either civil or military authority, and that every voter shall have

the same right as any other voter.    .    .    .    The cases hereinbefore cited, and many others not cited, show conclusively that our courts have never undertaken to impale legislative power on points of sharp distinction in the enactment of laws intended to safeguard the ballot and to regulate the holding of elections. Indeed, so far as we are now advised, no act dealing solely with the details of election matters has ever been declared unconstitutional by this court. This for the reason that ballot and election laws have always been regarded as peculiarly within the province of the legislative branch of the government, and should never be stricken down by the courts unless in plain violation of the fundamental law.

"In the present case, it is pertinent to inquire: What provision of the constitution has been clearly violated by the act of 1913? Appellants make answer by pointing to that clause of the bill of rights which requires 'elections to be free and equal.' We have already discussed this clause in a general way, but it remains to briefly consider the points now pressed upon us. It is contended that the act under consideration is discriminatory and restrictive in its operation because it limits the names of candidates on the official ballot to the two who polled the highest vote at the primary. There is nothing new or novel in the provision thus criticized. If there is to be an official ballot, there must of necessity be a limit to the number of names printed thereon, else such a ballot would mean nothing. If everyone had the right to have his name printed on the official ballot, there would be no necessity or occasion to furnish such a ballot. The old law limited the number of names to be printed upon the official ballot, and the legislature provided the method by which to determine what names should be so printed. Thus the legislature prescribed the limitations, and the courts declared this to be a valid exercise of the legislative power. The act of 1913 simply prescribes another method of reaching the same result. The people vote directly for such persons as submit their names at the primary, and the two polling the highest number of votes are entitled to have their names printed upon

the official ballot. There is no distinction in principle between this method of limiting the number of names entitled to be printed on the ballot, and the old system whereby the same result was secured through party nominations or by groups of citizens. In both cases the legislature prescribed the limitations, and, in so doing, exercised a power clearly contemplated by the constitution. We see no more abuse of the power in one case than in the other; its quality is the same under the new act as under the old law, but the methods provided for determining the result are different. Who can say that one method is lawful and the other unlawful? The constitution says nothing about nominations, or how candidates shall be chosen, or how many names shall be printed on the ballot. It furnishes no rule by which to accurately determine what the legislature may or may not do in the enactment of laws relating to such details in the exercise of the elective franchise. In the absence of any express constitutional limitation upon the power of the legislature to make laws regulating elections and providing for an official ballot, nothing short of gross abuse would justify a court in striking down an election law demanded by the people, and passed by the lawmaking branch of government in the exercise of a power always recognized and frequently asserted.

"In a general way it may be said that elections are free and equal within the meaning of the constitution when they are public and open to all qualified electors alike; when every voter has the same right as any other voter; when each voter under the law has the right to cast his ballot and have it honestly counted; when the regulation of the right to exercise the franchise does not deny the franchise itself, or make it so difficult as to amount to a denial; and when no constitutional right of the qualified elector is subverted or denied him. Judged by these tests, the act of 1913 cannot be attacked successfully on the ground that it offends against the 'free and equal' clause of the bill of rights. It denies no qualified elector the right to vote; it treats all voters alike; the primaries held under it are open and public to all those who are entitled to vote and

take the trouble to exercise the right of franchise; and the inconveniences, if any, bear upon all in the same way under similar circumstances, and are made necessary by limiting the number of names to be printed upon the official ballot, a right always recognized in our state, and not very confidently disputed in the case at bar.       .      .      .

"It is further suggested that the proviso to section 13 makes the provisions of the act unreasonable and discriminatory by providing in substance that when only one person is to be elected to a particular office, and there are several candidates at the primary, the one who shall receive more than one half of the total vote polled for such office, and more than one half of the number of ballots cast in the political district or division, such candidate shall be the sole nominee for the office, and his name alone shall be printed as a candidate upon the official ballot. With the wisdom of this provision we have nothing to do. Our only duty is to determine whether it was within the power of the legislature to so provide. We have already decided that the legislature did not exceed its power in limiting the number of names to be printed upon the official ballot to the two candidates who received the highest number of votes at the primary, but it is insisted that this rule should not be applied to the proviso in question. It is difficult to draw an arbitrary line and say that a certain number of names shall be printed upon the official ballot, and that a less number may not be without infringing the rights of the elector. If the courts should say that it is a lawful exercise of legislative power to limit the number of names to be printed on the ballot to the two candidates who received the largest vote at the primary, and that the printing of a less number of names is an unlawful limitation, this would simply mean the substitution of judicial for legislative judgment. Primarily this is a legislative and not a judicial duty. Courts can interfere only when the legislature acts in plain disregard of constitutional rights. This court has decided that the limitations imposed must not amount to a denial of the franchise itself, and this is the extremest limit to which our cases

have gone. It cannot be reasonably said that the exercise of the elective franchise is denied to the individual voter by the limitation contained in the proviso to section 13. The elector may vote for the name thus printed upon the ballot, or he may write in the name of any person for whom he may choose to vote, and thus he is not denied the right to exercise the franchise of voting in accordance with his convictions, preferences, or sense of public duty. It is true that the candidate who receives more than one half the votes polled in the election district at the primary has an advantage over all others, but this is an advantage given him by the votes of a majority of the electors who performed their public duty by attending the primary and exercising their right to vote. The elector who fails to vote at the primary, and thus disregards the opportunity afforded him under the law, is not in position to complain because of an advantage given the successful candidate by a majority of the voters who did attend the primary and performed their duty in this respect. This advantage results from a direct vote of the people, and those who are dissatisfied with the nomination thus made are not concluded by it, but may vote for a defeated candidate, or for any other person for whom they desire to vote, by pursuing the method pointed out in the act. In view of the wide discretion which the legislature has always exercised in the enactment of election laws, and the elective franchise not being denied anyone, we are not prepared to say that this limitation makes the act unconstitutional and void. Even under the old system it often happened that there was only one candidate for the office of judge, and indeed it may be confidently said that such a situation will not more frequently arise under the new act than it did under the old law.''

This case would seem to dispose of relator's second contention. The same court, in *Wasson v. Woods,* 265 Pa. St. 442, 109 Atl. 214, had this provision again under consideration and there said:

''The suggestion that the provision for sole nominees in the act virtually changes the time of the election

fixed by the constitution is without weight.  Although no name of a competitor will appear on the official ballot, nevertheless there will be an election.  The elector still has the right of selection between such sole nominee and any other person he may desire to vote for by inserting the name of that person in the blank space on the ballot left for that purpose.''

The supreme court of California, in *Miller v. Childs,* 28 Cal. App. 478, 152 Pac. 972, had before it a constitutional provision similar to ours and a legislative provision in regard to election of judges such as ours, and sustained such an act.  The right is expressly given by §§ 5212, 5272 and 5282 Rem. Comp. Stat.[P. C. §§ 2259, 2101, 2089], to any elector to write in the name of any person for whom he may wish to vote, and the supreme court of Massachusetts, in *Commonwealth v. Rogers,* 181 Mass. 184, 63 N. E. 421, held that such provision protects all the rights of any elector.  To the same effect is the case of *Barr v. Cardell,* 173 Iowa 18, 155 N. W. 312. See also McCrary on Elections (4th ed.), p. 508.

All the authorities seem to be agreed that the second provision of § 5212 violates no constitutional rights. It is true, of course, that, as stated by the supreme court of Minnesota in *State ex rel. McCarthy v. Moore,* 87 Minn. 308, 92 N. W. 4, ''no plan will ever place all candidates on a perfectly similar footing;'' but the advantage which is obtained under § 5212 is an advantage which is given by the electors themselves and is not such an advantage as deprives any elector of any right guaranteed him by the constitution.

For the reasons stated, the application for a writ compelling the officers of Spokane county to place the name of the relator upon the ballot for the general election, was properly denied.

MAIN, C. J., BRIDGES, PARKER, and TOLMAN, JJ., concur.