## CHESTER G. W. GUSTAFSON v. MIKE HOLM.[1]

October 5, 1950.

No. 35,430.

*Fryberger, Fulton & Boyle,* for petitioner.

[1]Reported in 44 N. W. (2d) 443.

*J. A. A. Burnquist,* Attorney General, and *Donald C. Rogers,* Assistant Attorney General, for respondent.

*William Mitchell, Rollin G. Johnson,* and *Reuben G. Thoreen,* members of a committee authorized by the Board of Governors of the Minnesota State Bar Association, as *amici curiae,* filed a brief in support of the contention of respondent.

KNUTSON, JUSTICE.

This is an original proceeding under M. S. A. 202.08[2] upon the application of petitioner for an order requiring respondent, as secretary of state, to place petitioner's name upon the ballot as a candidate for the office of associate justice of the supreme court at the forthcoming November general election.

The terms of three of the associate justices of the supreme court will expire on the first Monday in January 1951. At the 1949 session of our legislature, L. 1949, c. 690 (M. S. A. 205.82) was enacted. It reads as follows:

"When two or more associate justices of the Supreme Court or two or more judges in a Judicial District are to be nominated at the same primary election or elected at the same general election, the notice of election shall state the name of each such associate justice or judge whose successor is to be nominated or elected. Each associate justice or judge is deemed to hold a separate non-partisan

---

[2]"When it shall be made to appear by affidavit to any judge of the supreme court in the case of a state election, or of the district court in the case of a county election of the proper county, that an error or omission has occurred or is about to occur in the placing of any name on an official primary election ballot, that any error has been or is about to be committed in printing such ballot, or that any wrongful act has been or is about to be done by any judge or clerk of a primary election, county auditor, canvassing board, member thereof, or other person charged with any duty concerning the primary election, or that any neglect of duty has occurred or is about to occur, such judge shall order the officer or person charged with such error, wrong, or neglect to forthwith correct the error, desist from the wrongful act, or perform the duty, or forthwith show cause why he should not do so. Failure to obey the order of such judge shall be contempt of court."

120

office. The official ballot shall contain the names of all candidates for each such office, shall state the number of associate justices or judges to be elected and the number of candidates for whom an elector may vote, and shall designate each candidacy as 'For the office of associate justice of the supreme court to which_____

Name of Justice

was elected for the regular term,' or 'For the office of associated [sic] justice of the supreme court to which_____was

Name of Justice

appointed,' or 'For the office of judge of the district court of _____judicial district to which_____

Number of district          Name of Judge

was elected for the regular term,' or 'For the office of judge of the district court of _____judicial district to which

Number of district

_____was appointed,' as the case may be. The

Name of judge

ballots for both the primary and general elections shall show in the spaces for the purpose the name of the justice or judge whose successor is to be elected at the general election, and in the case of district judge the number of the judicial district, and, if a justice or judge is a candidate to succeed himself, the word 'incumbent' shall be printed after his name where it appears among the names of the candidates for the office.

"In addition to the statements required by Minnesota Statutes, Section 202.03, to be set forth in his affidavit of candidacy, any person eligible and desirous of having his name placed upon the primary ballot as a candidate for associate justice of the supreme court or as a candidate for judge of the district court shall state in his affidavit of candidacy the office of the particular justice or judge for which he is a candidate. The filing of such affidavit of candidacy with the secretary of state or the county auditor and a compliance with all other requirements of section 202.03 shall constitute such person a candidate for such non-partisan office, and for that office only."

Pursuant to this act, three candidates, including the incumbent, Mr. Justice Christianson, and petitioner, filed for one of the offices

to be filled at the November 1950 election. Two candidates, including the incumbent, filed for the office held by Mr. Justice Magney, and only the incumbent filed for the position held by Mr. Justice Matson. The result is that six candidates filed for the three positions to be filled, and under the old law all six would have appeared on the general election ballot. In the primary election, petitioner was the lowest of the three running for the office which he sought and was thereby eliminated. Under the present law, his name will not be placed on the ballot at the general election. He now contends that L. 1949, c. 690 (M. S. A. 205.82) is unconstitutional. He contends that our constitution does not create six separate and distinct offices of associate justice, but that all candidates filing for associate justice must run against each other, and he further contends that the act is unconstitutional for the reason that it is unequal and partial legislation and that it gives to the incumbent justice an unfair advantage over other candidates.

Minn. Const. art. 6, § 2, provides in part:

"The supreme court shall consist of one chief justice and six associate justices."

Art. 6, § 3, provides in part as follows:

"The judges of the supreme court shall be elected by the electors of the State at large, and their term of office shall be six years, and until their successors are elected and qualified."

The constitution is entirely silent on the method of nomination of candidates for the office of justice of the supreme court. Petitioner apparently does not question the right of the legislature to provide some method whereby candidates may be eliminated by a primary election.

In State ex rel. Nordin v. Erickson, 119 Minn. 152, 154, 137 N. W. 385, we upheld the constitutionality of L. 1912, c. 2, § 2,[3] which provided:

---

[3]Apparently repealed as to candidates for nonpartisan offices by L. 1913, c. 389.

"When two or more persons are to be elected for the same office, at a general election running at large in a city, county, district or in this state, such offices shall be classified and numbered as hereinafter provided and the nonpartisan nominees to be placed upon the general election ballot shall be the two candidates in each such class who shall receive the highest number of votes at such primary election. * * * Where there are two or more offices to be filled by candidates running at large in a city, county, district or in the state, such offices shall be classified and numbered one, two, etc., using as many classes and numbers as there are offices at large to be filled. * * * The officer preparing said ballot shall provide as many classes and numbers as there are offices at large to be filled. Every person when filing as a candidate for the nomination for any such office shall designate in his affidavit the number and class in which he desires to file and become a candidate and his name shall be placed on the ballot in such designated number and class. Such classes shall be rotated upon the ballots in the same manner as provided by law for the rotation of names of candidates. * * * The name of the candidate who has filed for such office, or who shall file for the same, shall not be placed on the ballot if he shall fail, neglect or refuse to designate the class and number in which he desires to file and become a candidate, as hereinbefore provided."

We there said (119 Minn. 155, 137 N. W. 386) :

"* * * whatever the people have not by their Constitution incapacitated themselves from doing they may do by their representatives in the legislature, unless it be an act forbidden by the Federal Constitution."

In State ex rel. Onstine v. Bartlett, 131 Wash. 546, 230 P. 636, the court had before it the constitutionality of an act applicable to judges of the superior court, quite similar in its operation to the act considered in the Nordin case by our court, except that it went further in providing that if any candidate received a majority of all votes cast at a primary election for such office his name alone would be printed on the ballot at the general election without any oppos-

ing candidate. In upholding the constitutionality of this act, the Washington court said (131 Wash. 547, 230 P. 636):

"* * * confusion should be avoided between 'judges' and 'courts.' Shepard v. Gove, 26 Wash. 452, 67 Pac. 256; State ex rel. Romano v. Yakey, 43 Wash. 15, 85 Pac. 990, 9 Ann. Cas. 1071; In re Newcomb, 56 Wash. 395, 105 Pac. 1042. The court is one entity of which there may be several judges; * * *. The supreme court of Iowa, in Schaffner v. Shaw, 191 Iowa 1047, 180 N. W. 853, said:

" 'The judges are but organs of the court, the conduits through which it speaks. The court and judge are by no means a unit. * * * The increase or diminution of the number of judges * * * is of * * * the judges, but not of court. * * *'

"* * * The true interpretation is that the court in each county is a single entity of which there are as many officers as there are judges provided by law."

Steiger v. Collins, 215 Cal. 634, 12 P. (2d) 426, involved the constitutionality of a California act providing that where two or more judges or justices of any court of record are to be elected for the same term, and in the primary election preceding such election, it shall be deemed that there are as many separate offices as there are judges or justices to be elected and that each such separate office shall be designated by a number. It then required the candidate for such office, when filing, to designate the number-designated office for which he intends to become a candidate. In upholding the constitutionality of the act, the California court, in following the Washington court in State ex rel. Onstine v. Bartlett, 131 Wash. 546, 230 P. 636, *supra,* and in rejecting the opinion of the Ohio court in State ex rel. Graves v. Bernon, 124 Ohio St. 294, 178 N. E. 267, relied upon by petitioner here, said (215 Cal. 637, 12 P. [2d] 428):

"* * * Each [decision] rests upon a confusion of the terms 'judges' and 'courts'. Petitioner's entire argument of this point is based upon the theory that the superior court judges occupy a

single office. The provision of the Constitution has nothing whatever to do with the question whether the judges constituting the superior court shall be deemed to hold one or several offices."

The Bernon case involved the constitutionality of a statute reading (see 124 Ohio St. 297, 178 N. E. 268):

"Where two or more judges of the court of common pleas are to be elected in a county at any one election, the various candidates for such office shall designate in their respective declarations of candidacy at a party primary the particular term for which each is a candidate by naming the incumbent he seeks to succeed, or in case of a vacancy, shall designate such vacancy by the name of the last incumbent, * * *."

Another act provided that Cleveland municipal judges shall be elected (124 Ohio St. 296, 178 N. E. 268) "in the manner provided by law for the election of judges of the court of common pleas." Five municipal judges were to be elected for a term of six years in 1931. The relator filed, but refused to designate which office he would be a candidate for. The Ohio court held the act unconstitutional, holding that there was but one office and one term.

If the case can be distinguished from the one now before us, it must be on the ground that in the Ohio case the terms of all judges involved began and terminated at the same time. That is not true of the offices of the supreme court or of the district courts of this state. Where a vacancy occurs, it is filled only until the next general election and the qualification of the person there elected. While all terms under our constitution are for six years (art. 6, § 3), they do not all commence nor terminate at the same time. Nor do all six associate justices or all the judges of the district court of any particular judicial district necessarily run for reëlection during the same year. If the Bernon case cannot be so distinguished, we do not feel inclined to follow it.

The effect of that decision is probably weakened by the later decision of State ex rel. Gustafson v. Krause, 131 Ohio St. 97, 102, 1 N. E. (2d) 937, 939, wherein the Ohio court, in a case in-

volving the constitutionality of an act providing for election of judges for the court of common pleas, upheld the constitutionality of that act and said:

"* * * what vested right can the relator or any other candidate for judicial office be said to have to a so-called group contest as distinguished from one in which but a single judgeship is to be filled?"

The case of State ex rel. Smith v. Kozer, 112 Or. 286, 229 P. 679, is not in point, since it did not involve a statute such as we have before us.

The Oklahoma court, in Kerr v. Luttrell, 143 Okl. 275, 288 P. 938, inferentially at least approves a statute of that state containing a provision similar to the Washington and California statutes.

The only provision in our constitution dealing with the election of members of the supreme court provides that (art. 6, § 3) "The judges of the supreme court shall be elected by the electors of the State at large, * * *." While it does not provide that the chief justice shall be a separate office, it has always been so understood. Keeping in mind the fact that it is the court, not the judges, which is a single entity, and the further fact that all six associate justices do not run at the same election, there is no reason why the legislature, in the exercise of its legislative prerogative, cannot control the method of election and cannot provide, as it has done in the act here under attack, that each judge shall be elected separately. The legislature has provided the method for nomination by nonpartisan primary ballot. M. S. A. 202.02. It is no longer possible for the candidate to state on the ballot his party affiliation.

If the contention of petitioner that all six associate justices hold but one office is tenable, it would be mandatory that all run for office at the same time. The fact that they do not do so, but, on the contrary, that they are elected according to the time that vacancies are filled, effectively demonstrates that they hold sepa-

rate offices. It is apparent from the fact that sometimes one justice is elected, sometimes two at other times, and, as during this year, three, and that even more may be elected, that they do not all hold the same office. In those years when only one justice is elected, can it be said that he does not hold an office of his own? We believe not. The only constitutional mandate respecting the manner of election is that "The judges of the supreme court shall be elected by the electors of the State at large, * * *." This act does no violence to that constitutional mandate.

Even if it were true that all six justices hold but one office, the provision that they are elected as a group comes from legislative act, not from the constitution. M. S. A. 202.02, so far as here pertinent, reads:

"The two candidates for nomination for each such non-partisan office who shall receive the highest number of votes, ascertained as provided by this chapter, shall be declared the nominees and their names shall be placed upon the election ballot, without party designation, and when two or more persons are to be elected for the same office, at a general election running at large in a city, county, district, or in this state, the non-partisan nominees to be placed upon the general election ballot shall be the number of candidates not exceeding twice the number of such persons to be elected for the same office which shall receive the highest number of votes at such primary election."

Obviously, this legislative act created the plan under which justices have heretofore been nominated. What the legislature could so create it could amend or repeal, as it has done by the act now under consideration.

Petitioner next contends that the act in question is unequal and partial legislation and that it gives the incumbent an undue advantage over other candidates. Indirectly this may be so, but that does not necessarily invalidate the act. Use of the word "incumbent" following the candidate's name simply informs the voter of the person who presently holds the position. In assisting voters

to cast their votes intelligently for offices unfamiliar to the average voter, it is only a matter of fairness that he be advised who the present judge is. If he then believes that the judge should be retained, he has the opportunity of expressing his opinion by his vote. If he feels that the present judge should be replaced, he has a like opportunity of so indicating his opinion. The underlying purpose of the legislation is to identify the candidate so that the voter will know whom he is voting for. In order to enable the electorate to know who candidates are, it is not always possible to treat all candidates with absolute equality.

The same arguments could be directed against M. S. A. 205.70, which provides that a candidate may be identified by stating after his name his residence and occupation where there are two or more candidates on the same ballot having the same surname. Prior to L. 1941, c. 527, the right so to identify a candidate was limited to those cases where two or more candidates having the same surname were running for the same office. By the 1941 amendment, this privilege was extended to cases where two or more candidates having the same surname appeared on the same ballot. Under this provision of our statutes, which has remained unchallenged as part of our election laws since 1915, if a candidate having the same surname as any of the incumbent justices running for reëlection filed for any of the offices, the incumbent whose name was the same could insert on the ballot not only that he was a member of the court, but also his residence. We have recently had occasion to consider that statutory provision in Dougherty v. Holm, 232 Minn. 68, 44 N. W. (2d) 83.

If in a case where two candidates having the same surname appear on the same ballot the legislature can provide for identification by permitting the candidates to state their occupations and residences, we fail to see why it lacks constitutional power to permit identification of a present officeholder by use of the word "incumbent" to denote the person who presently holds the office. Both are intended for the benefit of the voter, not the candidate.

Even though the candidate indirectly may derive some benefit from such identification, it does not follow that the legislation is unconstitutional. In State ex rel. McCarthy v. Moore, 87 Minn. 308, 311, 92 N. W. 4, 5, 59 L. R. A. 447, 94 A. S. R. 702, we said:

*"That any system will accomplish absolute equality in all things cannot be expected.* Under the previous methods of voting there were many defects, which have been in a measure remedied by the primary election law; *but no plan will ever place all candidates on a perfectly similar footing."* (Italics supplied.)

We are of the opinion that M. S. A. 205.82 does not contravene our constitution, and it is therefore unnecessary to consider other questions raised by respondent.

The order to show cause is discharged.

ASSOCIATE JUSTICES MAGNEY, MATSON, and CHRISTIANSON took no part.

[1]Reported in 44 N. W. (2d) 440.